GEORGE E. WEBSTER *et al.,* Executors, *vs.* JOHN L. WIGGIN *et als.*

A will which contains no express reference to after acquired lands and in which the description of the property devised is no more comprehensive than what it might have been had the testator intended to devise only what he owned at the time of its execution, will not pass after acquired land since the testator's intention to devise the same does not appear by the express terms of the will as required by Pub. Stat. R. I. cap. 182, § 1.

Where a testator after making his will purchased land at a foreclosure sale made under a power of sale contained in a mortgage which had been acquired by him prior to the execution of his will, such land is acquired by the testator at the time of the foreclosure sale, and does not pass by a will which does not include after acquired land.

Real estate of which the testator is the equitable owner at the time of making his will and the legal title to which is conveyed to him after its execution will pass under a devise of all the testator's estate, although the will does not include after acquired property.

On a bill by executors for instructions, the court expresses no opinion as to the effect of the will on land situated in another State.

A testator bequeathed $4000 to the town of M. in the State of New Hampshire upon the following trusts : $250 to be given to the public library in M. village ; $250 to be divided among the school districts in M. for school district libraries ; $3000 to be invested and the income applied to various purposes ; and $500 to be invested for certain other purposes.

He also bequeathed $500 to the State of New Hampshire upon certain trusts.

The will provided that the bequests to the town M. and the school districts thereof and to the State of New Hampshire shall be paid to the respective legatees by the executors only upon a formal acceptance of the same and satisfactory assurances of the execution of the trusts.

*Held*, that the bequest to the town of M. was separable and might be accepted or rejected by the respective beneficiaries.

*Held*, further that the trusts attached to the gifts to the town of M. and the school districts if legally established will be under the supervision of the equity courts of New Hampshire, and the executors need not require a bond to be given.

*Held*, further, that an act or resolution of the General Assembly of New Hampshire accepting the legacy to the State and agreeing to its conditions is a sufficient assurance to the executors to justify the payment thereof, under the terms of the will.

The testator gave the residue of his estate to an association which he expected would be incorporated, in trust for the following purposes : *First*, to invest it and apply the income thereof when from accumulations of interest and donations, if any, the fund shall have reached the amount of $500,000, in purchasing land in the city of Providence and building thereon such healthful and convenient tenements as are suitable for the laboring classes, which are to be rented and properly cared for and kept in repair ; or, if the trustee deems it advisable for the security and growth of the fund, to invest it at once in the purchase of lands and building of such tenements thereon, and apply the rents and income therefrom to the same purposes instead of maintaining other investments of the principal : *Second*, when the fund with its accumulations amounts to $500,000 in value, one half of the income thereof is to be devoted to the payment of additional teachers in the public schools in the city of Providence, or if the city refuses to co-operate with the trustee in that design, then the trustee may apply it to the establishment of schools for the education of the children residing in the tenements controlled by the trustee.

Subsequently to the execution of the will and before the testator's death, the General Assembly passed an act incorporating the association named in the will as residuary legatee, the purposes of which corporation were substantially the same as the purposes of the trusts declared by the testator in the residuary clause of his will.

*Held*, that the trusts declared were valid as charitable trusts.

A charitable trust is one which originates from a gift, and which limits property to any public use to which it is lawful to devote property forever. The legality of such appropriation may be established by general rules of law, or by special act of the sovereign power. In either case, if the use is public the trust is a charity.

BILL IN EQUITY for instructions.

Chase Wiggin died February 23, 1891, leaving a will dated January 13, 1883, which was admitted to probate by the Municipal Court of the city of Providence, March 24, 1891. By this will the testator, directs the payment of his debts and funeral expenses and the purchase of a burial lot, gives legacies to his nephews and grand-nieces, and then continues as follows :

I give and bequeath to the town of Meredith, in the State of New Hampshire, the sum of Four Thousand Dollars ($4,000.00) to be by said town applied to the following purposes in the proportion and in the manner here ·prescribed, namely :—Two Hundred Fifty ($250.00) to be given to the public library now established at Meredith village. Two Hundred Fifty Dollars, ($250.00), shall be divided equally among the several school districts in said town of Meredith, for the purpose of establishing school district libraries, provided, however, than an equal sum be raised, by said town or said districts to be used at the same time for the same purpose. Three Thousand Dollars ($3,000.00) of said sum shall be kept securely and continually at interest, and the income thereof, shall be used in the manner following, that is to say : one quarter of said income shall be added to the principal annually ; one quarter shall be annually given to the afore mentioned library already established at said Meredith village ; another quarter shall be equally, each year, divided among the several school districts of said town of Meredith for the purpose of renewing and increasing their libraries should such be established as herein before provided ; and the remaining quarter shall be paid annually as a premium for some one of the following objects, viz :—the first year this sum shall be paid to any party in said town, for the best acre of some farm crop, the kind of crop to be designated each year, by the Council or Select Men of said town, one year previous to the payment of said premium ; the second year this sum shall be divided into two parts of such proportions as said town authorities may prescribe, and shall be paid as first and second premiums to boys between the ages

of twelve and eighteen years, for the best and second best quarter acre of some farm crop, the kind of crop to be prescribed as in the case of the preceding premium ; the third year this premium shall be paid for the best ten or twenty rods of roadside improvement or adornment, as determined and awarded by said town authorities ; and if at any time, it is by said town Council or Select Men deemed advisable, said third premium may be divided into a first and second premium ; and it is hereby to be understood that each of said objects shall receive the benefit of a premium every third year. If, however, in the course of time the principal sum of Three Thousand Dollars ($3,000.00) bequeathed for the aforesaid purposes shall, by accumulations of interest or otherwise, have increased to the sum of Nine Thousand Dollars ($9,000.00) and when the income of the same shall have increased correspondingly, then each of the above named objects may, in the discretion of said town Council or Select Men, receive a premium each year, or said town authorities may add to the list of premiums offered, others for success in other branches of farming ; and should said sum of Three Thousand Dollars ($3,000.00) so bequeathed, so largely accumulate beyond said sum of Nine Thousand Dollars ($9,-000.00) as that in the opinion of said town authorities the whole income thereof, shall not be required to judiciously stimulate the industries indicated, then such portions of the income of the surplus, as they shall deem expedient shall be used in some other way calculated to improve the physical, moral and intellectual condition of the youth of said town, or to advance its agricultural and manufacturing interests, and sanitary improvements may likewise be encouraged. The remaining Five Hundred Dollars ($500.00) of the Four Thousand Dollars ($4,000.00) bequeathed to the said town of Meredith shall be carefully invested in some safe and productive manner, the interest of which shall be continually added to the principal until said principal shall have been doubled eleven times in arithmetical progression (which will require two hundred years or more) and shall amount to One Million Dollars ($1,000,000.00.) At such time this sum shall, by

said Council or Select Men, or by commissioners or trustees, legally elected by and representing said town in the premises, be securely invested in such safe and profitable manner, as they shall think advisable ; and the interest and income thereof shall be used or expended for educational purposes, for the improvement of agriculture, for promoting arboriculture, by premiums or by the purchase of otherwise worthless, or nearly worthless lands, and planting them with suitable timber trees, for the improving and beautifying highways, by premiums or in other ways in the discretion of the trustees or commissioners of this fund, so that in time, there shall not be a waste or unsightly place in the whole town.    The use of a portion of the income of this fund for agricultural and educational purposes, may include the purchase and management of an experimental farm in connection with an agricultural school, the founding and maintaining of a home and school for the children of indigent parents, in which they may receive a good and wholesome physical, moral, and intellectual training and thus be enabled to become good and useful citizens.    It is the hope of the testator that this fund of Five Hundred Dollars ($500.00) may form, or prove to be the nucleus, to be increased by large accretions in the form of donations and bequests from others, and thus so rapidly increase, that in much less time than herein before anticipated, the sum of One Million Dollars, may have accumulated at which time the income of such bequest of Five Hundred Dollars and its accumulations may be applied, together with that of other accessions to the purposes prescribed. If however, other persons shall increase this fund largely by donations or other ways, on the sole condition that the interest or income of said fund shall be used for the aforesaid or similar purposes when it shall have accumulated to the sum of One Hundred Thousand Dollars ($100,000) I hereby consent that this legacy may be so used, reserving, however, the condition that one quarter of the income of the whole fund shall be added to the principal annually until the whole amount of said fund shall reach the sum of One Million Dollars ($1,000,000), the sum originally designed to be reached

by the testator. It shall be the duty of the trustees and managers of this fund, to report annually in open town meeting, or (if no such annual town meeting be held), to otherwise publish and make publicly and generally known, the condition and application of said fund.

I give and bequeath to the State of New Hampshire the sum of Five Hundred Dollars ($500.00), on the same conditions, for the same or similar purposes, and to be managed and administered in the same manner so far as practicable, and the income to be applied to the advancement of the same objects as contemplated by, and prescribed in the preceding bequest of Five Hundred Dollars to the town of Meredith, namely : to be invested until by compound interest or other accumulations it shall amount to the sum of One Million Dollars, ($1,000,000,) when its income shall be applied to the same or similar educational or other purposes as contemplated in said gift of Five Hundred Dollars ($500.00), to said town of Meredith. Commissioners or trustees shall be appointed by the Legislature of said State, to manage and receive this bequest, keeping it properly invested until the period shall arrive, when its income may, under the provisions of this gift, be applied to the purposes proposed. So long as this fund shall not amount to more than Ten Thousand Dollars, ($10,000.00) said commissioners or trustees shall report to the Legislature of said State, its condition and how invested, at least once in five years ; and after said fund shall have increased to an amount larger than Ten Thousand Dollars, ($10,000.00) said officers shall report as above each and every year.

The foregoing bequests to the town of Meredith and the school districts thereof, and to the State of New Hampshire shall be paid over to such respective legatees, by my executors only, upon a formal acceptance of said legacies by them and satisfactory assurance to said executors of the execution of the trusts hereinbefore created.

I give and bequeath to the Rhode Island Medical Society, the sum of Four Thousand Dollars ($4,000), to be productively invested, the interest or income of which shall be used

in the following manner: one-quarter shall be added to the principal of said bequest forever. One-half of the remainder of said income shall be used or expended annually for the improvement and increase of the library of said society; the remainder of said interest shall be paid each year as a premium, for the best popular essay on one of the following subjects, namely,—the first year said essay shall treat of the nature of alcoholic or intoxicating drinks and their evil effects on the human system; the second year said essay shall treat of tobacco and its evil effects in all its forms on those who habitually use it; the third year said premium shall be paid for the best popular essay on the use of tea and coffee as drinks, and such essay will be expected to demonstrate that the constant and habitual use of either is injurious. These essays shall be continued, in the same succession, continually,—an essay on each of said subjects to receive a premium every third year. If, however, in the opinion of the committee appointed by said Medical Society to award said premiums, no essay on the subject prescribed, shall be presented, which is worthy of acceptance, then the amount of said premium, shall be added to the original fund, and the same subject for such premium shall be continued to the next year. But if on the second year, said subject shall not be so treated by any essayist, as, in the judgment of said committee to be entitled to a premium, the amount thereof shall be again added to the principal gift, and the next following year the premium shall be offered for an essay on the next subject in order as above named. It is to be hoped that these essays, while of moderate length, will be sufficiently elaborate to present the subjects, clearly and forcibly, and that they will be sufficiently meritorious to be desired by the newspaper press for publication throughout the country. The Society shall present copies of these essays to such newspapers, as shall desire them for such purpose, that they may attain their chief object which is to educate the people and dissuade them from the use of such articles, as a luxury, as are positively injurious to health.

I give and bequeath to Brown University in the City of Providence, Rhode Island, the sum of Two Thousand Dollars

($2,000), to be securely invested and its income to be applied as follows:—one-third of the interest to be added to the principal annually, until such principal shall amount to the sum of One Hundred Thousand Dollars, ($100,000.00). Two-thirds of the interest of said bequest and its accumulations shall be paid annually to some indigent student or students to assist them in defraying their expenses while in said college. No person shall receive any part of, or assistance from this bequest, who is addicted to the use of intoxicating drinks or tobacco in any of its forms; and all recipients of its benefits will be expected to use their influence to discourage the use of tea and coffee as a beverage.

In selecting the beneficiaries of this gift, preference shall always be given to the descendants of my father, Richard R. Wiggin, who died in the town of Meredith in the State of New Hampshire in the year 1858, provided such applicant shall bring to the authorities of said University such proof of such descent as that little or no trouble be required, on their part, as to determine his right to such precedence.

Should a woman, being a descendant of my father, the said Richard R. Wiggin, apply to said Brown University, for admission, and for the benefit of this bequest, being qualified for such admission, and the rules or by-laws of said college, shall not at that time permit her entrance to the same, then should she enter some other college and pursue her studies in the same, from year to year, then said Brown University shall pay over to her, annually, the same sum, she would be entitled to, from the income of this bequest, provided she had been permitted to enter and pursue her studies in said Brown University. It is my opinion and belief that both sexes should have equal facilities and opportunities provided them for obtaining a higher education.

I give and bequeath to Dartmouth College, in the State of New Hampshire, the sum of Two Thousand Dollars, ($2,000), for the same purposes, to be used and invested in the same way, and its income dispensed to like recipients under the same conditions as prescribed in the preceding gift to Brown University.

I hereby instruct and direct my Executors, to control all and every part of my estate, real or personal, and to keep the same in good condition and well invested, paying all proper and reasonable expenses therefor from the income thereof. This provision will necessarily include the power, on the part of said executors of this my last will and testament, to sell any part of the real estate or personal property and re-invest the proceeds, provided, by so doing, said real estate or personal property shall be made more secure and more profitable; and power and authority, so to do, is hereby expressly conferred upon said executors; but in no case shall such changes be made unless all the executors assent thereto. After having paid the necessary expenses of managing and maintaining such estate, as aforesaid (which it is hoped may be done as economically as possible) then, the balance of the income thereof, together with all the proceeds from the settlement of book accounts and other credits, shall be used for and devoted to the payment of the aforegoing legacies and bequests, herein before provided and ordered to be paid. When said legacies and bequests shall have been fully paid, which shall be done in the order in which they are herein before recited, and as soon as the accumulation of my estate and the proceeds of my book accounts and credits will permit, then the executors of this my Will and Testament, shall convey, assign, transfer, set over, and deliver to the Providence Building, Sanitary and Educational Association, (if such a corporation shall be legally in existence), the whole and every part and portion of my estate, real, personal and mixed, which they have up to such time been instructed and empowered to hold and control for the sole and specific purpose of paying from the income thereof such preceding legacies and bequests. To said Providence Building, Sanitary and Educational Association, (which is to be incorporated, and will be incorporated before the devise and bequests to it herein provided shall take effect), and shall also before receiving such devise and bequest have power and authority, by its charter to perpetuate itself, to receive donations, bequests, and legacies and gifts or subscriptions to its funds which

fund shall be called the "Providence Building, Sanitary and Educational Fund" the object of which Fund shall be the same as the objects of this devise and bequests, which are hereinafter set forth and described) : — I give, grant, bequeath and devise the whole and residue of my estate and property, real and personal, of all and every kind and description, and wheresoever found, including mortgages, stocks, notes, claims on individuals, book accounts, and every thing of what name and nature soever, that comes under the head of property,—not herein before disposed of, in this my will and testament,—to the said corporation, to have and to hold the same, to the use of them and their successors, in trust for the following purposes namely :—this property or estate shall be kept so invested in such safe and profitable manner as the directors or authorized committee of said proposed corporation, shall think best. The interest or income arising from such property, and estate, after paying all expenses attending its management, shall be added annually to the principal until the whole estate with accumulated interest shall amount in value to the sum of Five Hundred Thousand Dollars ($500,000.00). When such time shall have arrived or when such estate and accumulations together with subscriptions, donations, devises and bequests from other persons, shall amount to said sum of Five Hundred Thousand Dollars ($500,000.00), then the interest and income arising from such estate and property, together with the income from the gifts that may have been added to it, for similar purposes by others, shall be used and invested in the following manner : —land or real estate shall be purchased, at first generally, in such localities in the City of Providence, Rhode Island, as shall be the most convenient for residences of the laboring classes, and such convenient and healthful tenements shall be built thereon, as shall be suitable in amount of room and costs of construction for such tenants. A sufficient number of these tenements shall be built in one locality, to require most of the time of one suitable person to supervise and take charge of them, to keep them in proper repair, to see that they are not abused by the occupants, and that they are kept

clean and tidy at all times ; to collect rents, to attend to all
sanitary matters, connected with them, and to otherwise
oversee and direct in all matters, relative to such tenements
and their tenants, which may be intrusted to him by said
corporation.    No intemperate, disorderly, or filthy persons
shall be allowed to occupy any tenement built or provided by
this fund.    If in the judgment of said corporation, it shall
be deemed advisable for the security and growth of said Fund,
to invest the whole of it, as soon as conveniently and without
sacrifice it may be done, in the purchase of lands and build-
ing thereon as above prescribed, and afterwards, continue to
use and apply the rents and income therefrom for the same
purpose, it may be so invested instead of maintaining other
investments of said principal.    Another object of the "Provi-
dence Building, Sanitary, and Educational Association"
(which though not now incorporated the testator trusts and
believes, will be legally created before this devise and bequest
thereto takes effect) will be, and the object of such devise
and bequest is, educational in the broad sense of the term,—
to improve the moral, physical, and intellectual condition of
the youth of the city.    One, and a very important way of
attaining this object, is to improve the public schools, espe-
cially those of the lower grades.    This cannot be done with-
out increasing the number of teachers in these grades, to at
least double the number now employed, as it is impossible for
any teacher of small children, to do justice to them if more
than fifteen or twenty are under her charge.    Therefore I
hereby direct that from the income from the tenements herein
before provided for, by this devise and bequest or its income,
shall be divided into two equal parts annually :—one part of
said annual income, shall be used and expended in further
building as above prescribed, and the other half to be used
for the payment of such additional teachers, as shall be re-
quired for placing the lower grades of the public schools on
the basis above named.    By the coöperation of the City,
through the council, its Superintendent of Public Schools,
and its school committee, this change may, it is hoped, be
effected in the following manner :—The city may furnish

additional rooms and divide the schools as fast as the funds herein before provided, shall sufficiently accumulate to pay the additional teachers required ; in this way all the public schools in the city may be eventually reached and improved without additional expense to the city, except for furnishing the additional rooms required.  By this plan the question of ventilation would be simplified, the health and morals of the children would be better looked after, the instruction would be more thorough, and much of the wear and tear of the nervous systems of both teachers and pupils would be obviated.

Should said city of Providence neglect or refuse to cooperate with the trustee of this fund, so that the improvement of schools as above proposed becomes impracticable, said trustee, The Providence Building, Sanitary and Educational Association, may with such portion of such income of said fund so prescribed, for such improvement, provide and maintain schools on the improved plan proposed, for the instruction and benefit of the children occupying the tenements herein before provided.

It shall be the duty of the executors of this, my last will and testament to notify all the legatees and devisees named herein of the nature, amounts, and conditions, of such legacies, and if either of said legatees or devisees named herein, shall decline to accept such legacy or devise or neglect to notify said Executors of their acceptance of such legacy or bequest with its accompanying conditions, for the space of six months after having received such notice from said Executors, then the amount of such bequest, shall be used for, and applied to, the payment of other bequests, or shall revert to the estate.

A properly authenticated receipt, from each of said legatees or devisees shall be a sufficient evidence of the payment of such legacy or devise to exonerate and discharge my said executors.

I hereby nominate and appoint George E. Webster of East Providence, and William S. Hayward, Charles D. Wiggin, Oliver C. Wiggin, and Edwin M. Snow of the City of Provi-

dence, Executors of this my last Will and Testament, and do hereby revoke all other and former wills by me made, and do publish and establish this and this only, as my last Will and Testament.

In testimony whereof I have hereunto set my hand at Providence in said County, this 13th day of January A. D. 1883.

CHASE WIGGIN.

Signed, published, proclaimed, and declared by Chase Wiggin as and for his last will and testament, in our presence, who have, each, at his request, in his presence, and in the presence of each other, hereunto set our names as witnesses.

SOLOMON A. OWEN.

[SEAL.]
BENJAMIN T. OWEN.<br>FRANKLIN P. OWEN.

The act of the General Assembly incorporating the association named as the residuary legatee in the foregoing will, passed June 1, 1883, is as follows :

## AN ACT TO INCORPORATE THE PROVIDENCE BUILDING, SANITARY AND EDUCATIONAL ASSOCIATION.

WHEREAS, For a long time the attention of many humane and intelligent persons, physicians, educators and others has been directed to the desirability of providing for the laboring classes of the city of Providence and vicinity residences affording greater comfort and convenience, and under more favorable sanitary conditions, with better opportunities for the education of their children than are at present available to them ; and

WHEREAS, The establishment of a charitable organization, the purpose of which shall be the attainment, direction and conservation of the humane purposes aforesaid will obviously be of great advantage to the people of said city and vicinity, and to the State ; therefore,

*It is enacted by the General Assembly as follows:*

SECTION 1.   That Chase Wiggin, Edwin M. Snow, James W. C. Ely, Charles W. Parsons, John H. Stiness, William S. Hayward, Nicholas Van Slyck, J. William Rice, William A. Spicer, D. Russell Brown, Jennison C. Hall, George A. Leete, Beriah Wall, Samuel S. Bucklin, Charles A. Barden, Frederick E. Keep, H. Martin Brown, Herbert E. Maine, John Austin and Benjamin F. Arnold, all of Providence, and Ellery H. Wilson and George E. Webster of East Providence, and their associates, who may hereafter be admitted members of the corporation according to its by-laws, are hereby incorporated and made a body corporate and politic by the name and style of the Providence Building, Sanitary and Educational Association, and by that name and style shall have perpetual succession; be capable of suing and being sued, pleading and being impleaded, answering and being answered unto, defending and being defended against, to final judgment and execution in all courts of law and equity; and may have and use a common seal, to be by said corporation devised, altered and renewed at its pleasure.

SEC. 2.   The said corporation may take and receive, hold, purchase and possess real and personal estate, and may sell, assign and exchange the same; and the same may be used, altered and improved for the purposes contemplated in the creation of said corporation as set forth in the preamble hereto.   It may erect, construct and complete, furnish and equip tenement and school houses and other buildings; may employ teachers, managers and collectors, and may take and receive and hold gifts, grants, devises, bequests and leases of real and personal property, which property, so taken, held and received, and its proceeds, shall be held and enrolled as the "Providence Building, Sanitary and Educational Fund."

SEC. 3.   The said corporation shall ordain, institute, establish and put in execution such rules, regulations and by-laws as may be deemed expedient for the government and economy of its institutions, and for the well ordering, managing and

conducting of all the affairs thereof, and of all officers, agents and persons appointed or employed by it in whatever capacity; and may alter and amend the same at pleasure, provided the same are not repugnant to law; and may generally do and transact all other matters and things fit and proper for bodies corporate to do and transact.

SEC. 4. The said association and all the property and concerns of said corporation shall be under the direction and management of eight trustees or directors, who shall be chosen annually and shall remain in office until others are chosen in their stead.

SEC. 5. The said corporation may, at their first or any subsequent meeting, elect a president, secretary and treasurer, and all other necessary and convenient officers, who shall have such power and authority as said corporation may think proper to delegate to them; and who shall be elected in such manner and for such periods of time as the by-laws of said corporation may provide; and such president, secretary and treasurer shall be *ex-officio* members of the board of trustees, with the same power and authority as the other eight members of said board possess and enjoy, and shall in like manner remain in office until others are chosen and qualified in their stead.

SEC. 6. Any three of the associates mentioned in the first section of this act are hereby authorized and empowered to call the first meeting of said corporation by notification, and therein to appoint the time and place of said meeting, which notification shall be published in one of the newspapers of the city of Providence for three successive weeks before the day of said meeting.

SEC. 7. All profits and proceeds accruing to said corporation, whether from sales or rentals of its property or otherwise, over and above the necessary expenses of management, shall be strictly applied to the charitable purposes contemplated in the creation of such association, as set forth in the preamble hereto.

SEC. 8. This act shall take effect from and after its passage.

*April* 20, 1895.   DOUGLAS, J.   The scheme of the will, upon which the questions suggested to us arise, is briefly as follows :   The testator, after directing payment of his debts and funeral expenses, and the purchase of a place for his burial, makes a specific bequest of certain property used by him in the practice of his medical profession to one of his nephews.   He then directs his executors to collect his book accounts and other credits, and to manage his other estate, real and personal, and, out of the proceeds of the book accounts and credits, and the income of the estate, to pay the expenses of administration, and seven legacies in the following order :—

I.   To each of five nephews, $500.00—$2,500.00.

II.   To Charles D. Wiggin, in trust for three of the testator's grand-nieces, $1,500.00.

III.   To the town of Meredith, New Hampshire, upon certain trusts, $4,000.00.

IV.   To the State of New Hampshire, upon certain trusts, $500.00.

V.   To the Rhode Island Medical Society, upon certain trusts, $4,000.00.

VI.   To Brown University, upon certain trusts, $2,000.00.

VII.   To Dartmouth College, New Hampshire, upon certain trusts, $2,000.00.   In all, $16,500.00.

The rest, residue and remainder of his estate, that is to say, the capital of the whole estate, excepting so much of the proceeds of book accounts and other credits which have been collected by the executors as may have been used by them for the payment of legacies, he gives to the Providence Building, Sanitary and Educational Association, to constitute a fund to be called the Providence Building, Sanitary and Educational Fund, which is to be held and administered by said corporation upon certain trusts.   Power is given to the executors while they are in control of this estate, to change the investment of it, and to sell and reinvest the proceeds for that purpose.   All the legacies and devises are made conditional upon the acceptance of the conditions attached to each gift, within six months after notice from the executors.   The

bequests to the town of Meredith and the school districts thereof, and to the State of New Hampshire, are to be paid only after formal accceptance by the legatees of such legacies, and satisfactory assurance to the executors of the execution of the trusts attached to them. The debts and funeral expenses of the testator, and the legacies to his nephews, and in trust for his nieces, have been paid, and a surplus of personal estate and income remains in the executors' hands. A corporation of the name designated in the residuary clause was chartered by the General Assembly, June 1, 1883, and was organized during the lifetime of the testator, with the testator and three of the executors originally named in his will among the corporators, and this corporation claims to be entitled under the residuary clause.

The questions raised by the bill are of three classes. The eighth question relates to the condition of the estate, as affecting the application of the will; the seventh relates to the validity of the residuary clause; the first six relate to the construction of the direction to the executors to give notice to, and demand assurance from, the legatees.

It appears that the testator died February 23, 1891, seized and possessed, besides his personal estate, 1, of real property acquired by him prior to the date of his will of the value of about four thousand dollars; 2, of real property situated in the State of Rhode Island acquired by him subsequently to the date of said will, of the value of about sixty-four hundred dollars; 3, of real property situated in the State of Massachusetts acquired by him subsequently to the date of said will, of the value of about one thousand dollars; 4, of real property situated in the State of Rhode Island acquired by him subsequently to the date of said will, at foreclosure sales made by virtue of powers of attorney contained in mortgages acquired by him prior to the date of said will, of the value of about sixty-five hundred dollars: 5, and also of a certain tract of land situated in said Providence, which was conveyed in fee and in mortgage to said Chase Wiggin, by deed, dated August 15, A. D. 1874, and recorded August 17, A. D. 1874, and sold by virtue of the power of attorney

contained in said mortgage deed to the defendant, Charles D. Wiggin, by deed dated April 3, A. D. 1875, acknowledged June 28, A. D. 1883, and recorded June 29, A. D. 1883, and conveyed by said defendant, Charles D. Wiggin, to said Chase Wiggin, by deed dated, acknowledged and recorded June 30, A. D. 1883, of the value of about fifteen hundred dollars.

The heirs at law contend that the lands in classes numbered 2 and 4, above, did not pass by the will, but that as to these lands and the income of them, the testator died intestate; and that the land in class 3, not being within the jurisdiction of the court, cannot be affected by this proceeding.

We are constrained to agree with this contention. While it may be inferred from the whole scheme of the will that the testator designed to dispose of all the estate which the law gave him power to affect by his will, we do not think he has availed himself of the privilege which our statute gives to a testator to dispose of after acquired real estate in the manner pointed out by the statute. There are no express terms in this will referring to property which he might acquire after the execution of it. The description of the property devised is as general as possible, but it is no more comprehensive than what might well have been used if he had intended only to convey what he then possessed. Pub. Stat. R. I. cap. 182, § 1; *Church* v. *Warren Mfg. Co.*, 14 R. I. 539; *Lorillard, Petitioner*, 16 R. I. 254.

As to the property in class 4, it seems plain that it was acquired as real estate after the making of the will. As a debt secured by a mortgage, it would have passed under the will as personal property, but the testator changed its character, and so we think exempted it from his testamentary provisions. *Ballard* v. *Carter*, 5 Pick. 112; *Brigham* v. *Winchester*, 1 Metc. 390; *Yardley* v. *Holland*, L. R. 20 Eq. Cas. 428; *Strode* v. *Russell*, 2 Vern. 624.

As in *Clarkson* v. *Pell*, 17 R. I. 646, we express no opinion as to the property in class 3.

The property in class 5 was owned by the testator at the date of the will. The legal title was in his trustee, who was under obligation to transfer it at any time, and who held it

for the testator's benefit or convenience, subject to the testator's absolute dominion. It was, in no real sense, acquired afterwards, when the legal title was conveyed. We conclude, therefore, that it is included in the estate affected by the will.

The heirs at law contend that the residuary clause is void, because the trusts imposed upon the legatee are not those which the claimant is authorized by law to administer, because these trusts are not charitable, because the time when the gift is to become effectual is too remote.

There can be no doubt that the testator intended the corporation which claims this gift to be the recipient and administrator of it. No such corporation was in existence at the date of his will, but he expressly says that it "is to be incorporated, and will be incorporated before the devise and bequests to it herein provided shall take effect," and before his death, he, together with his friends, organized the claimant corporation under a charter which he procured from the General Assembly, in which the objects of this clause of the will are substantially stated as the purposes of the corporation. This was an ancient method of founding a charity. "In other cases," says Mr. Tyssen, "the founders of charitable institutions procured for them charters of incorporation from the Crown with licenses to take lands in mortmain, and then conveyed or devised land to them." Tyssen on Charitable Bequests, 243. The residuary clause of the will and the charter were evidently conceived by the same mind and were designed to correspond to each other in the trusts declared by the testator and the trusts to be executed by the recipient. We find no discrepancy between them. Certain directions for the administration of the trusts in the will, not in any way repugnant to the provisions of the charter, are not repeated in it, and the direction for accumulation before commencing the building of houses, being optional, is not prescribed in the act. These differences, however, as well as the variations in expression between the two instruments, are only such as would naturally occur between a testamentary clause establishing a trust and a charter providing for a corporation for the purpose of administering it,

and are appropriate to the different structures of the two instruments. The intention of the testator was then to convey his property to this corporation to be managed as it might be under the terms of this charter and under the trusts specified in the will. Does the law forbid such a disposition of his estate in the manner he desires, or can his expressed intention be carried out?

The trusts annexed to the gift to the residuary legatee are: First, To purchase land, or real estate, in such localities in the city of Providence as shall be most convenient for residences for the laboring classes, and to build thereon, such convenient and healthful tenements as shall be suitable in amount of room and costs of construction for such tenements. This employment of the fund may be made by the trustee, either at once or when the fund invested in other ways by them shall amount to five hundred thousand dollars in value. Certain directions as to the mode of administering the trusts are added. A sufficient number of these tenements shall be built in one locality to require most of the time of one suitable person to supervise and take charge of them, to keep them in proper repair, to see that they are not abused by the occupants, and that they are kept clean and tidy at all times ; to collect rents, to attend to all sanitary matters connected with them, and otherwise to oversee and direct in all matters relative to such tenements and their tenants, which may be intrusted to him by the corporation. No intemperate, disorderly, or filthy persons shall be allowed to occupy any tenement built or provided by this fund. These directions imply that the tenements so directed to be built may be let to laborers for rent, not gratuitously furnished to them.

Secondly : When the trust fund, with its accumulations, amounts to five hundred thousand dollars in value, one-half of the future income is to be devoted to the payment of salaries of additional teachers in the public schools of Providence, or if the city refuses to coöperate with the trustee in that design, then the trustee may devote it to the establishment of schools for the education of the children residing in the tenements controlled by the trustee.

We think the second branch of the trust is charitable, in the light of all the precedents. *Attorney General* v. *Earl of Lonsdale,* 1 Sim. 105 ; *Russell* v. *Allen,* 107 U. S. 163 ; *Pell* v. *Mercer,* 14 R. I. 449, and cases cited. It is for the purpose of promoting the efficiency of the public schools, and seems wisely designed for that purpose, or, in the alternative, to establish schools under the powers granted to the trustee by its charter. But it is objected to on the ground that the application of the income for the promotion of education, in either way, is contingent upon such an accumulation as may not take place within the time permitted by the rule against perpetuities. It must be conceded, however, that this rule has no application if the fund in the meantime is devoted to charity. Gray on Perpetuities, § 597 ; *Christ's Hospital* v. *Grainger,* 16 Sim. 83 ; S. C. 1 McN. & G. 460 ; *Odell* v. *Odell,* 10 Allen, 1 ; *Jones* v. *Habersham,* 107 U. S. 174 ; *Chamberlayne* v. *Brocket,* L. R. 8 Chanc. 206 ; *Russell* v. *Allen, supra.*

Prof. Gray criticises the reasons given for Lord Cottenham's decision in *Christ's Hospital* v. *Grainger,* as assuming that the object of the rule against perpetuities is to prevent property from becoming inalienable. Gray on Perpetuities, §§ 599–600, *et seq.* The avoidance of an indefinite suspension of the right of alienation is at the root of the rule against perpetuities and cannot be ignored, but we may suggest that the doctrine of the case may be supported on another ground. Where property is well given in trust for a charity, and, upon a remote contingency, this first trust is to terminate and a second charitable trust to begin, the intention of the testator is that the first trust shall be benefited so long as in his opinion, its provisions can be usefully carried out, and then that the fund shall still be devoted to charity in some other way. That is to say, he makes a case for the *cy pres* disposition of the fund. The first trust failing to be practicable or useful, he points out another charitable object of his bounty, and so does in advance what the court would do if he had omitted the second provision.

In the case at bar, the testator supposed that after the fund

in question should have increased to the value of five hundred thousand dollars, one-half of the accruing income would be enough for the primary branch of this trust, and so has directed a different disposition of one-half the income from that time.  This is substantially what the court would have done when it became apparent to them that the whole income of the fund could not usefully be expended for the purposes of the first charity.  In making a *cy pres* disposition of a fund, the court follows the supposed wish of the donor :  Why should it not confirm his express direction ?  But, upon whatever ground the doctrine may be based, it has met with universal approbation as a rule of law.  The crucial test, therefore, of the validity of the whole residuary clause, is whether or not the first trust declared is a valid charitable trust.

The objections to the validity of the trust which have been urged upon us are :  First, that it is not charitable; and, secondly, that, not being charitable, it is void, under the rule against perpetuities.

If the residuary legatee were a private person, and the gift were not affected by a trust, he would take in the *corpus* of the estate, at the death of the testator, either a vested estate in fee charged with the term given to the executors, or an absolute equitable fee postponed in its enjoyment to a later time; and, in the latter case, the legal estate would pass to the executors in trust, first to raise legacies, and then to convey to the residuary legatee.  The legal estate, in the first construction, or the equitable estate in the second, being surely given to a definite person, are equally exempt from the rule against perpetuities.  Gray on Perpetuities, § 205.

We think that the estate given by this will to the residuary legatee in trust, is a legal estate in fee simple in the real estate, and a vested interest in the personal property and surplus book accounts and credits.  The rents and income are, it is true, given to the executors, and such a general gift, standing alone, is undoubtedly a gift of the fee itself. 1 Jarman on Wills, * 741, and cases cited.  But here, the income is separated from the estate for a temporary purpose,

and the intention of the testator is plain that the *corpus* of the estate should be reserved for the residuary legatee.

In *Buchanan* v. *Harrison*, 8 Jur. N. S. 965, S. C. 31 L. J. Ch. 74, Wood, V. C., says: "The first contest was that those who take the indefinite gift of income were entitled to the actual *corpus* of the property. As to that, I hold quite independently of general authorities, which are numerous on the subject, that, on this will it was clear that there was a gift of income limited entirely by the period when he took upon himself to dispose of the *corpus*."

The provisions for changes of the fund by the executors are powers not necessarily implying a legal interest. If the power of sale of any part of the estate is exercised, the new investment must immediately take the place of the old, and come into the ownership of the residuary legatee. 1 Chance on Powers, p. 53, §§ 141, 142; *Buchanan* v. *Harrison, supra.* And so in regard to any income coming to the manual possession of the executors after the charges on the income are satisfied.

The power and control of the executors cease the moment the income accrued, together with the book accounts and credits, has amounted to enough to pay the legacies; the future income at once accrues to the owner of the *corpus* of the estate, and so there is no need of transfer of title by the executors. It belongs to the residuary legatee the moment it comes into existence.

If, however, the residuary legatee takes only in trust, to pay over to a private person, or for a private purpose, upon a contingency which may happen beyond the time limited by the rule against perpetuities, such trust is void, and the legatee takes, if at all, only in trust for the heirs at law. Equitable rights in individuals are subject to the rule against perpetuities, as well as legal estates. Gray on Perpetuities, § § 202, 323. Where the gift is upon a private trust, the beneficial interest must vest, or the application to the beneficial object must begin, within the time prescribed for contingent remainders at common law to vest, and so, in ascertaining the validity of a private trust, we must inquire at what time the

beneficiaries as well as the trustee are to acquire their interest. Perry on Trusts, 383 ; Gray on Perpetuities, § § 246, 413 ; *Mainwaring* v. *Baxter*, 5 Ves. 458.

It is argued that this is the present case ; that though the legatee takes, by the terms of the will, a vested legal interest in the *corpus* of the estate, the trust is to devote the fund to certain purposes, not charitable, at some time in the future, after its income, together with book accounts and credits, has been sufficient to pay the seven preceding legacies. It is certain that, if this be a private trust, no individual to be benefited by it can be ascertained until after the earning of the preceding legacies and even if the legacies are paid out of the book accounts and credits without resort to the income, no one of these individuals can enforce upon the trustee an execution of the trust in his favor until the lapse of the further time required for the fund to grow to $500,000. It is those persons, of the laboring classes, who shall desire to live in Providence, when the preceding legacies are earned and the accumulation of the fund is completed who are to be the beneficiaries under the trust. But, if the trust is charitable, and no remote condition precedent is imposed to its operation it is lawful and valid, whatever may be the time fixed for its enjoyment to begin—the immediate and unconditional devotion of the fund to charity, and not the time or manner of the administration or distribution of the fund, being the test of the validity of its creation. *Chamberlayne* v. *Brocket*, L. R. 8 Ch. App. 206 ; *Russell* v. *Allen*, 107 U. S. 163. This rule is inevitable from the nature of charitable trusts. The fund must be set aside in perpetuity, and the beneficiaries are a succession of persons, in each of whom the beneficial interest vests from time to time in the future to remote ages. To apply the rule against perpetuities to such a fund would destroy the trust during the second generation. Such trusts are guarded from misuse by being placed under the special·control and direction of courts of equity, and the investment of their funds and the mode of their administration may be altered within the limits of the foundation as circumstances require. There is no condition precedent to the

legacy we are considering, except that it shall be accepted by
the trustee within six months after notice.    The direction for
accumulation is optional, and in no sense a condition pre-
cedent.    We come, then, to the vital question, whether it is
a private trust, and so, void ; or what is called in the law a
charitable or public trust, and so, valid.

It is urged that the trust is not a charity because its bene-
fits are not gratuitous, and its special beneficiaries are not
required to be poor.    But these are not necessary character-
istics of a charitable trust.    It is enough that the fund shall
originally be a gift, if it possesses the other qualities of a
charity.    *Attorney General* v. *Heelis,* 2 Sim. & Stu. 67, 77.
In *Attorney General* v. *Corporation of Shrewsbury,* 6 Beav.
220, a grant of right to keep a toll-bridge, and to apply the
tolls to keeping up bridges, gates, towers and wall of the
town, is held a valid trust.    Gifts to colleges where tuition
fees are charged have been invariably sustained.    The gene-
ral benefit to the community derived from the diffusion of
knowledge, which such institutions promote, is enough to
justify their foundations and permanent endowment.

So in this trust, the building of a colossal fund as a monu-
ment to the founder, is not its object ; but as he expresses it,
it is "to improve the moral, physical, and intellectual condi-
tion of the youth of this city."    We cannot doubt that the
erection and control of such tenements as the donor contem-
plates will promote the health, morality and intelligence of
those classes of citizens who are to occupy them, and by ex-
ample and competition, will tend to improve the sanitary
conditions of other estates, whose accommodations are now
limited by private interest to mere obedience of the compul-
sions of law.

But the donor has seen fit to entrust this fund to the ad-
ministration of a special corporation, and this is, in effect, to
adopt its methods and aims.    *Incorporated Society* v. *Rich-
ards,* 1 Dr. & War. 258, 294.    And so we are to take the pro-
visions of the charter as exemplifying and explaining the trust
in the will.    Various definitions, more or less exact, of the
legal term "charity" have been given by courts and jurists,

7

e. g., by Judge Gray, in *Jackson* v. *Phillips*, 14 Allen, 539, at page 556; by Mr. Binney, in the Girard Will case, *Vidal* v. *Girard's Executors*, 2 How. U. S. 127, quoted with approval in *Ould* v. *Washington Hospital*, 95 U. S. 303, and in *Price* v. *Maxwell*, 28 Pa. St. 23, 35; by Lord Camden, in *Jones* v. *Williams*, Amb. 651, approved in *Coggeshall* v. *Pelton*, 7 John. Ch. 292, 294, and in *Perin* v. *Carey*, 24 How. U. S. 465, 506; by Sir John Leach, in *Attorney General* v. *Heelis*, 2 Sim. & Stu. 67, 76; and by Durfee, C. J., in *Pell* v. *Mercer*, 14 R. I. 412, 444, and many others. These are all generalizations of the provisions of the Statute 43 Eliz. cap. 4. The twenty-one classes of trusts referred to in this statute have been taken by the courts as *criteria* in passing upon the character of trusts claimed to be charitable. But the enumeration of that statute is not exhaustive. Colleges are expressly excluded from its provisions, though the courts for a long time strained its language to include them.

Other trusts with objects quite remote from any known to the subjects of Queen Elizabeth have been sustained as analogous, or upon general principles have been deduced from that statute by broad generalization. And it is instructive, in the present connection, to note the principle upon which the Statute of Elizabeth is taken as a guide. "This is treated," says Mr. Tysson, "as an expression by the legislature, that all such purposes are lawful charitable purposes, and a guide to the courts in deciding upon the legality of other purposes." Tysson on Charitable Bequests, 33.

The trusts mentioned by the Statute are charitable because they are such as public policy, expressed by the act of the legislature, allows to be sustained by a dedication of property in perpetuity. Other trusts, then, endowed by the legislature with power to accept gifts of property, in mortmain for public purposes, must be considered charitable. So that a trust may be sustained as a charity by bringing itself within the Statute of Elizabeth, or its generalizations and analogies, or by showing specific authority from the legislature to perpetuate itself for the public or general benefit.

"Having regard to all legislative enactments, and general

legal principles, is it, or is it not, for the public benefit that property should be devoted forever to fulfilling the purposes named? . . . . These trusts, for purposes which the law considers it for the public benefit to perpetuate forever, are called charitable trusts. This is the only general definition which can be given of the word charity. If we want a more precise definition of what is and what is not a charity, we must resort to a simple enumeration of the purposes which have been included under the term." Tysson on Charitable Bequests, 5.

Funds supplied from a gift of the Crown, or the legislature, or from private gift for any legal public or general purpose, are charitable funds, to be administered by courts of equity. *Attorney General* v. *Heelis*, 2 Sim. & Stu. 67.

We conclude, then, that a charitable trust, in the legal sense, is one which originates from a gift, and which limits property to any public use to which it is lawful to devote property forever. The legality of such appropriation may be established by general rules of law, or by special act of the sovereign power. In either case, if the use is public, the trust is a charity.

Instances are common where donations in trust which would be forbidden by general law, have been upheld because made to corporations authorized by special act or license of the Crown, to hold property in mortmain.

The institution of a perpetual trust of a public nature, by grant of the legislature, though it be not called charitable in the act, is sufficient to make it charitable in the legal sense.

So, a grant of right to cut turves, made by Act of Parliament, was held by the Court of Appeal, in the case *In re Christchurch Inclosure Act*, 38 Ch. Div. 520, (Mar., 1888), to be a charitable trust. Lord Justice Lindley, at page 530, says : " The trust, being created by statute, cannot be held invalid on the ground of perpetuity or on any other ground. It is a perpetual trust for the occupiers for the time being of those cottages. But such a trust, unless it is a charitable trust, is one of a very anomalous character, and one which

it will be extremely difficult to give full effect to in all contingencies; . . . . . Now, although it is competent for the legislature to create trusts unlike any previously known, we do not think that a trust of that kind ought to be held to have been created if it is equally consistent with the object and words of the statute to hold the trust to be one with which lawyers are familiar and which there is no difficulty in executing. If, therefore, this trust can be properly regarded as a charitable trust, it ought, in our opinion, to be so regarded." Lord Lindley bases this conclusion, mainly, upon the decision of the House of Lords *Goodman* v. *Mayor of Saltash*, L. R. 7 App. Cas. 633, and says further: "The trust is for a comparatively small and tolerably well defined class of persons. The class consists of all the then and future occupiers of the cottages, and there may be several occupiers of one cottage. The class, however, though limited, is, as to its members, uncertain, and is liable to fluctuation, and the trust for that class is perpetual. This being the case, we are unable to distinguish this case from the trust which both Lord Selborne and Lord Cairns held to be a charitable trust, and therefore, valid, in *Goodman* v. *Saltash*." In that case, the House of Lords supposed an ancient grant of a right of fishery as a charitable trust imposed upon the fee of the fishery held by the Corporation of Saltash, in favor of certain of the inhabitants. Lord Selborne says, p. 642: "A gift subject to a condition or trust for the benefit of the inhabitants of a parish, or town, or any particular class of such inhabitants, is (as I understand the law) a charitable trust; and no charitable trust can be void on the ground of perpetuity;" citing *Wright* v. *Hobert*, 9 Mod. 64, where Lord Macclesfield established as a charitable trust an ancient grant of land for the pasture, during three months of the year, of the cows of "as many of the inhabitants of a certain village as were able to buy three cows and during seven months of the rest of the year to be in common for all the inhabitants;" and also *Jones* v. *Williams*, Amb. 651; *Attorney General* v. *Mayor of Carlisle*, 2 Sim. 437; *Howes* v. *Chapman*, 4 Ves. 542; *Attorney General* v. *Heelis*, 2

Sim. & Stu. 76, 77 ; *Attorney General* v. *Mayor of Dublin,*
1 Bligh, N. S. 347.   Lord Cairns in the same case says, page
650, "Such a condition would create that which in the very
wide language of our courts is called a charitable, that is to
say, a public trust, or interest, for the benefit of the free
inhabitants of ancient tenements.   A trust of that kind
would not, in any way, infringe the law, or rule against
perpetuities, because we know, very well, that when you
have a trust, which, if it were for the benefit of private indi-
viduals, or a fluctuating body of private individuals, would
be void on the ground of perpetuity, yet, if it creates a char-
itable, that is to say, a public interest, it will be free from
any obnoxiousness to the rule with regard to perpetuities."

In the light of these cases we have no difficulty in conclud-
ing that the trust for the erection and letting of tenements
such as are contemplated by this legacy, and the charter of
the residuary legatee, is a public or a charitable use.   The
trust here declared is not for the benefit of any persons who
existed as individuals in the regard or intention of the testa-
tor.   He designs them to be the objects of his bounty for no
reason personal to them or to himself.   They are a class of
mankind comprising an undetermined number of individuals,
each of whom is unknown and unrelated to him.   What par-
ticular persons · shall benefit by his gift he leaves to unan-
ticipated circumstances to determine.   Here we have the in-
definiteness of beneficial application which makes the trust
public.   "They (i. e. charitable trusts) may and indeed must
be for the benefit of an indefinite number of persons ; for, if
all the beneficiaries are personally designated, the trust lacks
the essential element of indefiniteness which is one character-
istic of a legal charity."   Gray, J., in *Russell* v. *Allen,* 107
U. S. 167.

The trust is then valid because it is lawful by the terms of
the charter, and charitable because it is a lawful perpetuity
for a public use, even if the special act of the legislature
establishing this trust as perpetual, and calling it in terms a
charity, is not binding upon the court to construe it to be
charitable.

It may be useful, briefly, to mention the cases cited against the validity of this trust.

The trust avoided in *Hillyard* v. *Miller*, 10 Pa. St. 326, though presenting somewhat similar characteristics to the present one, is clearly distinguishable from it. The court found that trust to be simply to create a loan office. Nothing was to be gained by the borrowers but loans of money, at market rates. There was no gain, or benefit to the public, at all. If these loans had been required to be expended in the improvement of a specified locality, under such regulations as would promote the health and welfare of its inhabitants, it might have been held good; and in that case, there was no legislative approval of the perpetuity.

In *Kendall* v. *Granger*, 5 Beav. 300, no specific object of the gift was named, but it was given to charity in its colloquial sense, or to general utility. If some specific institution of general utility had been named, such as a bridge, or dyke, a house of correction, or a highway, it would have made a good charity under the Statute of Elizabeth.

*In re Cullimore's Trust*, 27 L. R. Irish, 18, the Master of the Rolls held the gift as probably intended to benefit individuals, and not the public; and as such, it was void for uncertainty; and, on page 24, discussing the elements of a charitable trust, he says: "Mere kindness, generosity, or benevolence on the testator's part is not enough to constitute a charitable purpose; there must also be the element of poverty or need on the part of the object, or else the gift must be dedicated to some purpose, such as education, religion, or the like which the law regards as charitable." He thus leaves the definiton open; and the trust considered there is so dissimilar to the one we are considering that the decision is of no value here.

In *Thompson* v. *Shakespear*, 1 De G. F. & J. 399, it appeared that the execution of the trust involved a disposition of property owned and held by private individuals which the court could not compel, and so it failed. Lord Justice Knight Bruce, p. 408, says, "If the object of a museum could be dis-

sociated from Shakespear's house it might be possible to support the gift."

*In re Dutton*, 58 Law Jour. N. S. Exch. Div. 350, a gift to a private institution to be held in perpetuity for the benefit of its subscribers was held void. Kelly, C. B. says: "I think that if this institution were a charitable institution, the bequest would probably be void under the Mortmain Act; but when we look to the rules, we find the institution really is a species of club, and not a charity."

In *Chamberlain* v. *Sterne*, 111 Mass. 267, the question presented was whether a devise in trust to be applied "solely for benevolent purposes" in the discretion of the trustees, creates a public charity; and it was held that these words, standing alone, do not exclude objects not technically charitable and do not create a charity.

*Chapel of the Good Shepherd* v. *Boston*, 120 Mass. 212. This case decides that a charitable corporation having invested its funds in lodging houses, and not occupying them for any charitable purpose, must pay taxes on such real estate, under the statutes of Massachusetts. It is no authority for holding that a corporation, authorized to erect and manage tenement houses, under restrictions calculated to promote the public welfare, and for such purposes only as the legislature calls charitable, is not a charity.

*Donnelly* v. *Boston Catholic Cemetery*, 146 Mass. 163, decides that a cemetery corporation, not required by its charter to apply any part of its funds to charitable purposes, is not a charitable corporation.

Upon the words in the will the seven legacies in trust are affected by two contingencies—they are made payable out of the book accounts and credits or out of successive accumulations of income. If resort must be had to such accumulations all after the first one, unless that one is for a charity, would be too remote and void, but the inventory of this estate shows that the book accounts and credits alone are sufficient to satisfy all these gifts and so these legatees take interests vested at once and valid.

It appears from the Public Statutes of New Hampshire,

cap. 219, § 10, that service of writs in that State is made, in cases against towns, upon one of the selectmen and the town clerk, in cases against school districts, upon one of the school board and clerk of the district. The notices required by the will to be given to the town of Meredith, and the school district should be served upon these persons accordingly. Service may be made upon these parties by any disinterested person by delivering to each a copy of the notice, of the will and of the bill of complaint. Notice to the State of New Hampshire may be made by a similar service of the same papers upon the Governor of the State. These services may be proved by affidavit of the person making them. Similar copies may be served upon the other legatees, and service proved in the same manner. We think that an act or reso-lution of the General Assembly of New Hampshire, accepting the legacy given to the State, and agreeing to its conditions, will be a sufficient assurance to the executors to justify the payment of that legacy under the terms of the will.

We think the legacy to the town of Meredith and the school districts of the town are separable, as specific portions of it are given for distinct purposes, and that the separate amounts of $250.00, $250.00, $3,000.00 and $500.00, may be severally accepted or rejected by the beneficiaries respectively. The condition annexed to the second gift of $250.00 may be per-formed either by the town or by the school districts respect-ively. An appropriation by either of the amount required will be sufficient to authorize the payment of this legacy. We are not advised as to the legal capacity of the town of Meredith to take and administer the trusts annexed to the other portions of the four thousand dollars given them by the will. We will, therefore, refer the question to a Master to report whether or not some enabling act of the legislature of New Hampshire may be required in the premises. Such action was taken by the Privy Council in *Mayor of Lyons* v. *East India Company*, 1 Moore P. C. 175. See also *New* v. *Bonaker*, L. R. 4 Eq. 655 ; *Thompson* v. *Thompson*, 1 Coll. 381 ; *Attorney General* v. *Sturge*, 19 Beav. 597.

As these trusts, if accepted by the town and school dis-

tricts, and legally established, will be under the supervision
of the equity courts of New Hampshire, we see no necessity
of requiring any bond to be given.

*Cyrus M. Van Slyck*, for complainants.

*Joseph C. Ely, Ezra K. Parker, James B. Richardson &
Herbert Almy*, for different respondents.