## GRANVILLE FOSTER INGRAHAM

*v.*

## HARRIET A. INGRAHAM *et al.*

*Opinion filed November 8, 1897—Rehearing denied December 9, 1897.*

1. CHARITIES—*gift for erection of hospital for the poor is a charitable bequest.* A bequest of a fund to trustees for the erection and support of a hospital "for the treatment of the sick and diseased," which shall "provide for the poor and needy, as far as it may be possible to do so, without charge," is a charitable bequest.

2. SAME—*provisions of will containing charitable bequests are liberally construed.* Provisions of a will which contain charitable bequests will receive a more liberal construction than is allowable in case of gifts to individuals.

3. SAME—*trust to accumulate for charitable purpose—when not within rule against perpetuities.* In the absence of a statute limiting the time of accumulation, a trust to accumulate for charitable purposes will not be held to be within the rule against perpetuities.

4. SAME—*charitable bequest valid, if vested, though annexed trust may be void.* Where a vested estate is distinctly given to a charity, to which is annexed a trust for accumulation which violates the rule against perpetuities, the vested estate will be valid even though the annexed trust may be void, as the latter will be regarded merely as a mode of managing the trust.

5. SAME—*testator's intention to favor charity will prevail even if manner of managing gift falls.* The intention of a testator in favor of charity will be allowed to prevail even though his particular intention as to the manner of managing the gift falls.

6. SAME—*gift to take effect immediately construed as a present absolute interest.* A gift to charity intended by the testator to take effect immediately will be construed as vesting a present absolute interest, not subject to conditions precedent nor to the rule against perpetuities.

7. SAME—*immediate devotion of fund to charity is the test of the validity of the bequest.* The immediate and unconditional devotion of a fund to charity, and not the time or manner of its application or administration, is the test of the validity of a bequest for charity.

8. WILLS—*when gift vests at testator's death though payment is postponed.* Where a gift is general, with simply a direction that it be paid or applied at a specified time or upon the happening of a certain contingency, it vests at the testator's death, and its payment or application only is postponed.

9. SAME—*testator's language is liberally construed in favor of vesting estate.* In determining whether a gift is immediate or to be post-

poned until the time of payment or application, the language of the testator, used throughout the entire will, will be liberally construed in favor of the vesting of the interest.

10. SAME—*where two constructions are possible, that will be adopted which makes the bequest valid.* Where two constructions of a bequest to charity are possible, one of which will render the bequest void as an illegal perpetuity and the other will render it valid and operative, the latter will be adopted.

11. SAME—*language of testator construed as describing a present gift.* The words, "I * * * bequeath all the rest, residue and remainder of my estate, in whatsoever the same may consist and wherever situate, to my executors and trustees hereinafter named, in trust for the uses and purposes as follows," describe a present gift in trust.

12. SAME—*fact no estate intervenes is material in determining whether a gift is immediate.* The fact that no estate intervenes between the death of the testator and the time when a fund bequeathed to charity is to be applied to the charitable purpose, is a most material circumstance tending to show the testator's intention to make a present gift to charity, to vest at once upon his death.

13. SAME—*clause of will construed as creating a present gift to charity.* A bequest of the testator's residuary estate, to be held, invested and controlled by trustees, subject to the expenses of the trust and to the widow's personal expenses, until the fund shall reach a certain sum, to be then used to erect and maintain a hospital for the poor and needy, is an immediate gift to charity, and the estate vests in the charity at the testator's death, even though the accumulating trust should be void.

14. SAME—*accumulating trust not void if time of accumulation is limited to lives in being.* An accumulating trust created by will is not void as an illegal perpetuity, where, by necessary implication from the terms of the will, the time of accumulation is limited to the lifetime of the testator's widow, who is to have charge of the application of the fund.

15. SAME—*words "who are," used in describing beneficiaries, refer to those in being.* A provision in a will for any of the testator's nephews and nieces "who are" the children of designated persons, refers to nephews and nieces who were in being at the death of the testator.

16. SAME—*what will not invalidate a vested charitable bequest.* A vested bequest to charity in the form of an accumulating trust is not invalidated by the fact that the trustees are authorized to appropriate part of the fund to the support of certain of the testator's kindred "in the event" they should come to want, the unused portions of such appropriations "to revert" to the original fund.

17. TRUSTS—*use of words "I authorize" indicates an implied trust.* A provision in a will that if certain designated nephews and nieces "shall be at any time during their respective lives in need, I au-

1C9—28

thorize my said executors and trustees" to provide for their support, creates an implied trust, and not a mere discretionary power.

18. SAME—*when equity will manage trust, applying doctrine of cy pres.* Where an estate vests in trustees at the testator's death, but the direction for its management must be held invalid, equity will allow the vested estate to stand and will manage the trust in a legal manner, applying the doctrine of *cy pres.*

19. SAME—*doctrine of cy pres stated.* Where a definite function or duty is to be performed which cannot be done in exact conformity with the plan of the person who has provided therefor by will, such function or duty will be performed with as close approximation to the original plan as is reasonably practicable.

20. PLEADING—*equity—bill to construe a will should set forth circumstances surrounding testator.* A bill to construe and set aside a clause of a will on the ground of its supposed illegality should set forth such circumstances as serve to show the state of the testator's property, his family, and the like, to enable the court to read the will in the light in which it was written.

21. SOLICITOR'S FEES—*when borne by estate on construction of will— what the primary fund.* Where a testator has expressed himself so ambiguously as to render it necessary to apply to equity for a construction of the will to remove difficulties, the costs of the litigation, including solicitor's fees, should be borne by the estate, and the general residue is the primary fund for that purpose.

22. REHEARING—*when petition for rehearing must be denied.* A petition for rehearing must be denied where the sole question raised is the re-taxing of costs, involving the allowance of solicitor's fees and expenses for prosecuting an appeal in the Supreme Court, which question was not adjudicated in the trial court.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This is a bill, filed on August 24, 1894, in the circuit court of Cook county by Granville Foster Ingraham, grandson and heir-at-law of one Granville S. Ingraham, deceased, which, as originally drawn and subsequently amended, prays for a construction of the fourteenth clause of the will of said Granville S. Ingraham, and that the same may be set aside and declared null and void. Granville S. Ingraham died testate on December 20, 1892, leaving a will dated October 7, 1891. He left, him surviving, his widow, Harriet A. Ingraham, and no child or

children, but a grandson, Granville Foster Ingraham, appellant herein, the son of a deceased son of the testator by a former wife. Mrs. Harriet A. Ingraham, surviving widow of the testator is the step-grandmother of the appellant. The deceased father of the appellant, who was the son of the testator, was named Foster H. Ingraham. Said Foster H. Ingraham married one Frances E. Wood, and left, surviving him, his widow, Frances E. Ingraham, the mother of the appellant. The will of said Granville S. Ingraham is as follows:

"I, Granville S. Ingraham, of the city of Chicago, county of Cook and State of Illinois, being of sound and disposing mind and memory, do hereby make, publish and declare this to be my last will and testament, hereby revoking all former wills by me made.

"*First*—I hereby direct that my funeral expenses and all of my just debts be fully paid.

"*Second*—I give, devise and bequeath unto my beloved wife, Harriet A. Ingraham, the sum of fifty thousand dollars ($50,000), to be paid to her out of my estate, to be her sole and absolute property forever. I also give to my said wife the full and absolute use and control, so long as she may live, of the house which I am now erecting on Washington avenue, in Hyde Park, situated upon lot five (5), in block fifty-eight (58), original town of Hyde Park, in the north-east quarter (N. E. ¼) of section fourteen (14), township thirty-eight (38) north, range fourteen (14), east of the third principal meridian, Cook county, Illinois, which house, when completed, it is my intention shall be our homestead. This bequest is to be accepted by her in relinquishment and full satisfaction of her dower in any of my estate. The proceeds of such life insurance policies as may be payable to my said wife at my decease shall be, and be treated as, a part of the general assets of my estate.

"*Third*—I give, devise and bequeath to my executrix and executors hereinafter named, or to such of them as

may qualify and act, the sum of fifty thousand dollars ($50,000), in trust, however, for the uses and purposes as follows: My said executors and trustees shall hold, control, manage and invest said sum of fifty thousand dollars ($50,000) in such manner as they may deem proper; shall collect all profits, dividends and income; pay all necessary or reasonable expenses and charges for services performed by them in and by said trust fund, and out of the remaining income of said trust fund shall pay eighteen hundred dollars ($1800) per annum, and as much more as in the judgment of my executrix, executors and trustees hereinafter named may become necessary, to my daughter-in-law, Mrs. Fannie E. Ingraham, while she continues unmarried, in equal semi-annual installments, if possible, to be used by her for the support of herself and her son, my grandson, Granville Foster Ingraham, until he shall have attained the age of thirty-five (35) years. In case of the marriage or decease of said Fannie E. Ingraham before my said grandson shall have become thirty-five (35) years of age, then said sum of eighteen hundred dollars ($1800) per annum, or so much thereof as my executrix, executors and trustees hereinafter named shall deem just, proper and prudent, shall be paid and used under their direction for the support of my grandson, Granville Foster Ingraham. If my said grandson shall attend any college or educational institution away from his home, then so much of all the expense of such attendance as my executrix, executors or trustees shall deem proper, just and prudent shall in like manner be paid out of my surplus income derived from the trust fund hereby created, as aforesaid. Any unexpended income from said trust fund shall be added to the principal. When my said grandson, Granville Foster Ingraham, shall have attained the age of thirty-five (35) years he shall be entitled to receive and be paid by my trustees hereinafter named the said trust fund and its accumulations, or so much thereof as may remain, as his sole and absolute property

forever, and this trust hereby created shall then termi-
nate.   It is my desire that thereafter my said grandson
shall provide for the support of his mother so long as she
may be and continue unmarried or dependent upon him.
In the event of the death of my said grandson before he
shall come into the possession of the estate hereby cre-
ated for his own use and benefit, leaving issue surviving
him, then the income of said estate shall continue to be
paid to his mother, Fannie E. Ingraham, so long as she
shall live unmarried, and after her marriage or death said
estate shall descend to the said issue of my said grand-
son, Granville Foster Ingraham. In the event of his death
without issue before coming into possession of said estate,
then after the marriage or decease of his said mother,
Fannie E. Ingraham, my said trustees shall distribute
said trust fund, or so much thereof as may remain, as a
part of my residuary estate, provided, however, that in
such event said Fannie E. Ingraham shall continue to
receive the income therefrom, as hereinabove provided
for her, so long as she shall remain unmarried.

"*Fourth*—I hereby give, devise and bequeath to my
brother, Fernando C. Ingraham, the sum of forty-five
thousand dollars ($45,000), to be paid out of any remain-
ing part of my estate, in trust, however, for the uses and
purposes as follows: My said brother, Fernando C. In-
graham, shall have and enjòy the income of said sum
of forty-five thousand dollars ($45,000) during his natural
life, for his own use and benefit.   After his decease said
principal sum of forty-five thousand dollars ($45,000) shall
be distributed to or for the benefit of the following heirs-
at-law or descendants of said Fernando C. Ingraham: To
Harriet A. Ingraham ten thousand dollars ($10,000); to
William Marvin Ingraham ten thousand dollars ($10,000);
to Fernando C. Ingraham, Jr., ten thousand dollars ($10,-
000); to my wife, Harriet A. Ingraham, ten thousand dol-
lars ($10,000) in trust, who as trustees shall pay the income
thereof to Sarah E. Chase during her lifetime, and after

the decease of the said Sarah E. Chase the principal sum of ten thousand dollars ($10,000) shall be paid to her sister, Harriet A. Ingraham, daughter of my brother, Fernando C. Ingraham, to her, her heirs and assigns forever. I make this additional bequest to my niece, Harriet A. Ingraham, as an evidence of my appreciation of her self-sacrificing devotion to and care for her father during his illness. The remaining five thousand dollars ($5000) of said sum of forty-five thousand dollars ($45,000) in this clause above mentioned shall be paid to Thaddeus F. Ingraham, son of William Marvin Ingraham, to him, his heirs and assigns forever.

"*Fifth*—I give, devise and bequeath to my executors and trustees hereinafter named the sum of fifteen thousand dollars ($15,000) in trust for the uses and purposes as follows: They shall control, manage and invest said fifteen thousand dollars ($15,000) in such manner as they shall deem prudent and proper, and pay the income and profits thereof to my brother, Levi T. Ingraham, for his own use and benefit during his natural life. After his decease I give and devise the said principal sum of fifteen thousand dollars ($15,000) to my niece, Frank Herrick, daughter of my brother, Levi T. Ingraham, to her, her heirs and assigns forever.

"*Sixth*—I give, devise and bequeath ten thousand dollars ($10,000) to Robert B. Whitlock, of Amsterdam, New York, who is a son of my deceased sister, Eliza Whitlock.

"*Seventh*—I give, devise and bequeath the sum of thirty thousand dollars ($30,000) to the following named persons, daughters of my sister Emeline, now deceased: Sarah Rosaline, wife of W. D. Sunderlin, Eliza, the wife of John McNab, and Mary E., the wife of Dr. William L. Johnson, to be divided in equal parts between them, share and share alike, to them, their heirs and assigns forever.

"*Eighth*—I give, devise and bequeath to my trustees. herein named the sum of ten thousand dollars ($10,000), in trust, for the uses and purposes, as follows: They shall

manage, control and invest the said ten thousand dollars ($10,000) in such way as they deem prudent and proper, and expend the income thereof for the use and benefit of the children of Hiram F. Whitlock, who is a son of my deceased sister, Eliza Whitlock, of Amsterdam, New York. When the said children shall respectively attain the age of twenty-one (21) years, they shall each receive a proportional share of said ten thousand dollars ($10,000), which shall be divided in equal parts between them, share and share alike, to them, their heirs and assigns forever.

"*Ninth*—I give, devise and bequeath to my sister-in-law Mary F. Gilchrist the sum of five thousand dollars ($5000); to my sister-in-law Elizabeth A. Foster five thousand dollars ($5000); to my nephew John F. Gilchrist five thousand dollars ($5000); to my niece Hattie F. Gilchrist five thousand dollars ($5000); to my nephew Frank F. Gilchrist five thousand dollars ($5000); to my nephew James F. Gilchrist five thousand dollars ($5000), to them, their heirs and assigns forever.

"*Tenth*—I give, devise and bequeath the sum of one thousand dollars ($1000) to my executors and trustees, in trust, to be by them managed, controlled and invested, and the income therefrom to be used in caring for and keeping in order and suitable condition my lot in Oakwoods Cemetery, and also the lot or lots in the cemetery at Union Mills, Fulton county, New York, where repose the remains of my deceased parents and some other of my relatives. My said executors and trustees may make such permanent or other investment of said sum for such purposes, either with the corporations controlling such cemeteries or otherwise, as they may deem prudent and proper to secure the objects designed to be accomplished by this bequest.

"*Eleventh*—Out of the rest, residue and remainder of my estate, in case there shall be sufficient estate left, I give, devise and bequeath to my executors and trustees hereinafter named, twenty thousand dollars ($20,000), in

trust, notwithstanding, for the uses and purposes as follows: they shall distribute said twenty thousand dollars ($20,000), or so much as they may receive thereof after the payment of the other legacies and bequests in this will made, in equal parts, share and share alike, among the following public or charitable institutions, that is to say: To the Foundlings' Home in Chicago, which is or has been formerly under the care of one Dr. Shipman; to the Home of the Friendless in Chicago; to the Old People's Home, Chicago, and the fourth share to my friend William L. Johnson, M. D., of Johnstown, Fulton county, New York, in trust, as follows: He shall hold in trust and manage said sum in such manner as he may deem safe, wise and proper, and shall apply therefrom the income, as follows: The sum of twenty-five dollars ($25) per year to the care of the cemetery belonging to or connected with the Christian Church at Union Mills, Fulton county, New York, meaning the cemetery in which the remains of my parents are buried. The remainder of said income my said trustee shall apply in any manner he may deem wise and proper, in the exercise of his discretion as to the manner, for the support and maintenance of said Christian Church, or repairing, from time to time, the church buildings, and the support of the preaching of the gospel therein. In case of the death, refusal or neglect to act of said William L. Johnson as such trustee, his successor may be appointed by any court of competent jurisdiction in Fulton county, New York. It is my intention that said sum of five thousand dollars ($5000) shall be applied by my said executors and trustees for the use and benefit of each of said institutions or charities above named, whatever be their precise corporate names, in case sufficient estate shall be left after the payment of the other specific bequests in this will made. If sufficient estate shall not remain after the payment of such other bequests, any such deficiency shall be borne equally by each of said institutions or charities.

"*Twelfth*—I give, devise and bequeath all my household effects, including my library, pictures, household furniture, horses, carriages, clothing, and everything pertaining to my household or family establishments, of which I may die possessed, to my beloved wife, Harriet A. Ingraham, to be by her used or disposed of as she may desire, to be her absolute property forever; and I also direct my executors and the trustees hereinafter named to pay out of the income of my estate in their hands the taxes upon the house now in process of erection on Washington avenue, in Hyde Park, intended for my homestead, and hereinbefore set apart for my beloved wife during her lifetime. I also direct that out of the income of my residuary estate my executors and trustees shall pay all of my said wife's household and personal expenses, whatever the same may be, in addition to the bequests hereinbefore made to her in the second clause of this my will.

"*Thirteenth*—It is my intent hereby, inasmuch as I have heretofore given to my brother, William Sidney Ingraham, more money than he has manifested a capacity to appreciate, to cut off and bar him and his entirely from any share or portion of my estate, in any event or contingency whatever.

"*Fourteenth*—I give, devise and bequeath all the rest, residue and remainder of my estate, in whatsoever the same may consist and wherever situate, to my executors and trustees hereinafter named, in trust for the uses and purposes as follows: Said trustees shall retain said fund in their hands, and manage, control and invest the same until it shall have sufficiently accumulated for the purpose, paying therefrom the expenses of managing the trusts hereby created and the provision for my wife's household and personal expenses, as provided in the twelfth clause hereof, and then shall cause the same to be used for the erection and maintenance of a hospital for the treatment of the sick and diseased, to be located in the city of Chicago. And I authorize and request my

said wife, Harriet A. Ingraham, if she shall survive me, to select the location for such hospital, and also to direct how it shall be managed and controlled, intending hereby to provide that my said wife, during her lifetime, shall have the absolute control of the application of the fund hereby created for the maintenance and support of said hospital, which said hospital shall bear my name. It is my desire that the fund hereby created shall at least equal one hundred thousand dollars ($100,000) before any of it shall be expended for the purpose of the hospital in this clause of my will mentioned. I authorize my executors and trustees herein named to create a permanent corporation for the management and control of said hospital, with the consent of my said wife, if living, at any time when, in their judgment, it may be wise and proper so to do, and when said corporation shall be created I authorize my said trustees hereinafter named to convey to the said corporation the fund hereby created, to be, however, used for the support and maintenance of said hospital. It is my special desire that said hospital shall provide for the poor and the needy, as far as it may be possible to do so, without charge, and, in any event, with the least possible cost to those who are unable to pay for the attention or treatment they may there receive. In the event, however, that any of my nephews and nieces who are the children of my deceased sister Emeline, my deceased sister Eliza, my brother Levi T., and my brother Fernando C. Ingraham, shall be at any time during their respective lives in need, I authorize my said executors and trustees hereunder to provide for said nephews and nieces to the extent of $100,000 out of my said residuary estate, and the income thereof, at such times and in such sums as shall, in the judgment of said trustees, be wise and proper. Any portion of said $100,000 not so appropriated shall revert to the use of said hospital fund.

"*Fifteenth*—If, for any reason, my estate shall be or become insufficient to pay all the foregoing legacies or

bequests, it is my will that the said bequests to my wife and for the benefit of my grandson shall be first paid in full, before the payment of the other bequests herein named. Any deficiency shall be borne, first, by the public or charitable institutions mentioned in the eleventh (11th) and fourteenth (14th) sections of this my will, and in the event of further deficiency it shall be borne equally by the legatees herein mentioned, other than my said wife and the trustees of the fund set aside for my said grandson, or his mother.

"*Sixteenth*—Having entire confidence in the ability and integrity of the persons hereinafter mentioned as executors of this my last will and testament, I desire that their power over my estate shall be as complete and perfect as my own now is, and I hereby authorize and empower them to sell, convey, mortgage, exchange, lease or otherwise use my estate as to them shall seem wise and proper. In providing the income-producing and trust funds hereinbefore mentioned, my directors may retain such of my estate as they may deem prudent or proper, or they may sell or dispose thereof, investing the proceeds thereof in personal or real property in what shall appear to them to be safe investments, for the purpose of this my last will. It is my will and intent to hereby empower my said executors to pay the said bequests and legacies hereinbefore provided to be created, at such time and in such manner as they may think proper, out of my estate, either in money or by conveyance of the real estate or personal property. But in the event that the same shall be created or paid by the conveyance of real estate, such real estate shall be estimated and conveyed at such valuation as my said executors shall consider a just and fair valuation and appraisement, and not at its valuation at forced sale.

"*Seventeenth*—Whenever in this my last will and testament I use the word 'executors,' it is my intention, desire and meaning that such word shall be construed to include

my executrix and executors hereinafter named, or such of them as may qualify and act.

"*Eighteenth*—Inasmuch as my executors hereinafter named are also legatees under this my will, excepting my friend Henry V. Freeman, I hereby give and devise to him, the said Henry V. Freeman, in lieu of and satisfaction of fees to which he might otherwise be entitled or might otherwise receive as executor, and for the services to be by him rendered as executor, the sum of five thousand dollars ($5000). And it is my desire that my other executors herein named shall accept the bequests herein made to them in lieu of executors' fees, it being my expectation and desire that no executors' fees shall be paid other than the bequests herein made to such executors, or such of them as may qualify and act, provided, however, that they shall be paid their legitimate expenses incurred in performing their duties as such executors.

"*Nineteenth*—I hereby make, nominate, constitute and appoint my beloved wife, Harriet A. Ingraham, as executrix, and my friends, Henry V. Freeman, of Chicago, Cook county, Illinois, my nephew John F. Gilchrist, of the same place, and John McNab, Esq., of Gloversville, in the State of New York, and Dr. William L. Johnson, of Johnstown, Fulton county, State of New York, executors of this my last will and testament, and trustees thereunder, and request that they be not required to give bond during the lifetime of my said wife. And I direct that a majority of them shall have all the powers of the five in carrying out and fulfilling the purpose and intent of this my last will and testament. In the event that any of my executors and trustees hereunder shall die before the full execution of the trusts herein imposed on them, the survivors shall be clothed with all the authority, title, trusts and powers hereby granted, and in the event of the death of all of them, the circuit court of Cook county, Illinois, may, upon application of persons interested in my estate, appoint a successor or successors, who

shall be vested with full authority as executors or trustees hereunder.

"Dated at Chicago, this 7th day of October, A. D. one thousand eight hundred and ninety-two (1892).

GRANVILLE S. INGRAHAM."

To the original and amended bills the sole acting executors and trustees, Harriet A. Ingraham, Henry V. Freeman, and John F. Gilchrist, together with Hattie Ingraham, one of the defendants, filed a joint and several demurrer. Default was entered, both upon the original and amended bills, against all the defendants except those demurring as aforesaid. The demurrer was overruled; and the said Hattie Ingraham and the said executors and trustees elected to stand by their demurrer. Accordingly, the court below entered a decree, sustaining the will, and finding that the sole executors and trustees, Harriet A. Ingraham, Henry V. Freeman and John F. Gilchrist, after the payment of all the specific legacies, bequests and devises mentioned in paragraphs 1 to 13 inclusive of the will, were vested with the entire residue of the said estate, real, personal and mixed for the uses and purposes set forth in the will. The decree of the circuit court construed clause 14 of the will in accordance with the views expressed in the opinion of this court, except as indicated in said opinion. The opinion refers to such parts of the decree as it is necessary to notice, in order to determine the questions involved.

From the decree thus entered the appellant prosecutes an appeal to this court.

PENCE & CARPENTER, and GURLEY & WOOD, for appellant:

The rule against perpetuities is not applied for the purpose of ascertaining the intention of the testator or for the purpose of construction. It is applied upon grounds of public policy, founded upon historical and political

reasons, and its object is to defeat the intention of the testator as being contrary to public policy.  Gray on Perpetuities, secs. 629, 630; *Dungannon* v. *Smith*, 12 C. & F. 526.

A remainder must have a particular estate to support it; an executory devise need have no such intermediate estate.  *Blatchford* v. *Newberry*, 99 Ill. 45; *McCartney* v. *Osburn*, 118 id. 403; *Kingman* v. *Harmon*, 131 id. 171; *Strode* v. *McCormick*, 158 id. 142.

Where a residue is divided into parts, and when the disposition of a particular part of the residue itself fails from any cause, the part void will not go in augmentation of the remaining parts as a residue of a residue, but will devolve as undisposed of estate to the heirs-at-law or next of kin, according as it is real or personal property.  1 Jarman on Wills, (Bigelow's ed.) 764-766; *Skrymsher* v. *Northcote*, 1 Swanst. 566; *Lloyd* v. *Lloyd*, 4 Beav. 231; *Green* v. *Pertwee*, 5 Hare, 249; *Gibson* v. *Hale*, 17 Sim. 129; *Simmons* v. *Rudell*, 1 id. 115; *Humble* v. *Shore*, 7 Hare, 247; *Lightfoot* v. *Burstall*, 1 H. & M. 546; *Easum* v. *Appleford*, 5 M. & C. 51; *Beakman* v. *Bonsor*, 23 N. Y. 298; *Sohier* v. *Inches*, 12 Allen, 385; *Smith* v. *Haynes*, 111 Mass. 346; *Kerr* v. *Dougherty*, 79 N. Y. 327; *Attorney General* v. *Kinksman*, 2 Jac. & W. 270; Hawkins on Wills, 41.

Gifts to charity are subject to the rule against perpetuities, and if they may not vest within the period of life or lives in being and twenty-one years thereafter, they are subject to the rule, the same as gifts to an individual are subject to the rule.  Gray on Perpetuities, secs. 589-591, 596, 600, 604-607, 677, 678; *Cherry* v. *Mott*, 1 M. & C. 123; *Philadelphia* v. *Girard's Heirs*, 45 Pa. St. 9; *Chamberlayne* v. *Brockett*, L. R. Ch. App. 206; *Jocelyn* v. *Mott*, 44 Conn. 55; 1 Jarman on Wills, (Bigelow's ed.) 248; Tudor's Leading Cases on Real Prop. 580, 581; *Attorney General* v. *Gill*, 2 P. Wms. 269; *Johnson's Trusts*, L. R. 2 Eq. 716; *Leonard* v. *Burr*, 18 N. Y. 96; *Smith* v. *Townsend*, 32 Pa. St. 434; *Commissioners* v. *DeClifford*, 1 D. & W. 245; Tyssen on Charitable Uses, 424-427; *Howe* v. *Hodge*, 152 Ill. 270; *Webster* v. *Wiggin*,

28 L. R. A. 510; Challis on Real Prop. 181, 182; Marsden on Perpetuities, 309; 18 Am. & Eng. Ency. of Law, 362, 365; *Zimmer* v. *Sennott*, 154 Ill. 203; *Ryan* v. *Allen*, 120 id. 648; Hill on Trustees, 461; *Strode* v. *McCormick*, 158 Ill. 142; *Kirkland* v. *Cox*, 94 id. 400; *Blatchford* v. *Newberry*, 99 id. 63.

A devise or bequest to one person, accompanied by words expressing a wish or entreaty of others, may be held to create a trust, if the subject or recommendation that he will apply it to the benefit and the objects is sufficiently certain. *Colton* v. *Colton*, 127 U. S. 300; *Hess* v. *Singlar*, 114 Mass. 56.

A devise to any member of a class who may not be able to take, on the ground of remoteness, will render null and void the devise to the entire class. *Leake* v. *Robinson*, 2 Meriv. 363; *Howe* v. *Hodge*, 152 Ill. 252; 1 Jarman on Wills, 265; *McCartney* v. *Osburn*, 118 Ill. 403.

A gift of personal estate at a specified future time or upon the happening of a certain contingency will not vest until the time specified has arrived or until the contingency has happened, as the case may be. *McCartney* v. *Osburn*, 118 Ill. 403.

In case of a contingent estate or executory devise the expression always means those in being at the date of such vesting and distribution, and not at the date of the death of the testator. *Handberry* v. *Doolittle*, 38 Ill. 206; *Howe* v. *Hodge*, 152 id. 275; *Leake* v. *Robinson*, 2 Meriv. 363; 1 Jarman on Wills, (Bigelow's ed.) 265; 2 Powell on Devises, 303; *Jenkins* v. *Freyer*, 4 Paige, 47.

A testamentary trust, to be valid, must be limited to some certain thing; and this certainty as to the subject of the trust must appear from the will itself when it first speaks, viz., at the death of the testator. *Mills* v. *Newberry*, 112 Ill. 123; Tudor on Charitable Trusts, p. 223, sec. 14; *Ellis* v. *Selby*, 7 Sim. 352; *Vezey* v. *Jamson*, 1 Sim. & Stu. 69; *Williams* v. *Kershaw*, 5 C. & F. 111; *Kendall* v. *Granger*, 5 Beav. 303.

JAMES L. HIGH, for appellees:

A present gift in trust for charity, with directions to accumulate, is valid and operative, even though the period of accumulation may exceed lives in being and twenty-one years thereafter. 2 Perry on Trusts, sec. 738; *Odell* v. *Odell*, 10 Allen, 1; *Academy of Arts* v. *Harvard College*, 12 Gray, 582; *St. Paul's Church* v. *Attorney General*, 164 Mass. 188; *Tainter* v. *Clark*, 5 Allen, 66; *Nelson* v. *Cushing*, 2 Cush. 519; *Hawes Place Society* v. *Trustees*, 5 id. 454; *In re Bartlett*, 163 Mass. 509; *Franklin's Admx.* v. *Philadelphia*, 2 Pa. Dist. 435; *Woodruff* v. *Marsh*, 63 Conn. 125; *Attorney General* v. *Bishop*, 1 Bro. C. C. 444; *Henshaw* v. *Atkinson*, 3 Mad. 306; *Attorney General* v. *Craven*, 21 Beav. 392; *Society* v. *Attorney General*, 3 Russ. 142; *Sinnett* v. *Herbert*, L. R. 7 Ch. 232; *Chamberlayne* v. *Brockett*, L. R. 8 Ch. 206.

If the limits of such accumulation are not prescribed by the testator they may be controlled by a court of equity. *St. Paul's Church* v. *Attorney General*, 164 Mass. 188.

Even under statutes which prohibit accumulations for charity the gift itself will be sustained, the direction to accumulate only being held void. Charity being of the essence of the gift, all illegal conditions or restrictions annexed thereto will be treated as directions for management, and the charity will be sustained, the court, if necessary, directing a management *cy pres*. *Heuser* v. *Harris*, 42 Ill. 425; 2 Perry on Trusts, 728, 738; Gray on Perpetuities, secs. 607, 678; *Martin* v. *Maugham*, 14 Sim. 230; *Fisk* v. *Attorney General*, L. R. 4 Eq. 521; *Crerar* v. *Williams*, 145 Ill. 625; *Philadelphia* v. *Girard's Heirs*, 45 Pa. St. 9; *Woodruff* v. *Marsh*, 63 Conn. 125; *Williams* v. *Williams*, 4 Seld. 525.

Where a power is given to trustees to do or not to do a particular thing, at their discretion, the court has no discretion to lay a hand or prohibition upon the trustees as to the exercise of that power, provided their conduct be *bona fide* and their determination is not influenced by improper motives. Lewin on Trusts, (9th ed.) 690.

If a gift of personal estate is general, and there is merely a simple direction that it be paid or that the fund be distributed or divided at a specified time or upon the happening of a like contingency, it will vest at the testator's death, and the payment or distribution only will be postponed.  *McCartney* v. *Osburn*, 118 Ill. 403.

If an estate given to trustees for charity is once vested in them for a lawful purpose, all unlawful conditions, limitations, powers, trusts or restraints annexed thereto as directions for the management of the fund and not of the essence of the gift, will fall away and be simply void, leaving the estate still vested in the trustees, to be managed in a legal manner for the purposes of the charity. 2 Perry on Trusts, sec. 738.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is claimed by appellant, that so much of the fourteenth paragraph of the will as provides for a hospital is void as violating the rule against perpetuities. The violation is alleged to be found in the direction to accumulate. It is said that no fund or estate was intended to be given until such time as the fund should accumulate and be equal to $100,000, and that, as such accumulation to the amount specified might not happen within the time limited by the rule against perpetuities, that is to say, within a life or lives in being and twenty-one years and nine months thereafter, the bequest to the hospital is null and void. In order to determine the question whether or not the gift for the purposes of a hospital is void for remoteness, it will be necessary to consider the nature and character of the gift itself. Is the estate given a present and immediate estate, or does it depend for its existence upon the occurrence of some future event, which may not happen within a life or lives in being and twenty-one years, or twenty-one years and nine months, thereafter?

The hospital, contemplated by the terms of the fourteenth paragraph of the will, is to be a hospital "for the treatment of the sick and diseased," and which "shall provide for the poor and the needy." Therefore, the gift for the erection, support and maintenance of the hospital is a charitable bequest. In the courts of England and the United States legacies or devises to the uses of charity are entitled to peculiar favor and are regarded as privileged testaments. Any provision of a will, which contains a charitable bequest, is liberally construed; and such bequests are "never permitted to be lost, either by the uncertainty or failure of the persons, or objects for which they were destined." (*Heuser* v. *Harris*, 42 Ill. 425).

As a general rule, gifts to charities are not subject to the rule against perpetuities. (Gray's Rule Against Perp. sec. 589; 18 Am. & Eng. Ency. of Law, 363). The statute of 43 Elizabeth, chap. 4, known as the Statute of Charitable Uses, is in force in this State, and operates to exclude conveyances and devises for such uses from the operation of the rule against perpetuities. (*Andrews* v. *Andrews*, 110 Ill. 223).

It is a general rule, founded upon public policy, that a testator will not be allowed to give his estate to trustees to be accumulated by them for a time longer than a life or lives in being and twenty-one years and nine months. (2 Perry on Trusts, sec. 738). But this rule is more strictly enforced where the gift is to an individual and not to a charity. The courts incline so strongly in favor of charitable gifts that the latter always receive a more liberal construction than is allowable in case of gifts to individuals. (*Hunt* v. *Fowler*, 121 Ill. 269). In the absence of any statute limiting the time of accumulation, a trust to accumulate for charitable purposes will not ordinarily be held to be within the rule against perpetuities, (2 Perry on Trusts, sec. 738); and where there is no such statutory limitation, "a direction to accumulate a fund for a charity for a term beyond the common law

limit does not vitiate the gift for the charity." (2 Perry on Trusts, sec. 399; *Odell* v. *Odell*, 10 Allen, 1).

In *Crerar* v. *Williams*, 145 Ill. 625, the position was taken that "gifts to charity, before they become vested, are subject to the rule against perpetuities the same as are gifts to individuals;" and we there said: "The authorities cited in support of this position do not sustain it." But, in that case, it was conceded by both sides, that, after property is once vested in the charity, the charity can thereafter hold it in perpetuity. Where a vested estate is distinctly given, and to it is annexed a trust for accumulation, which violates the rule against perpetuities, the principal or vested estate will be valid, even though the trust for accumulation, so annexed to it, may be void. The latter will be regarded as a mode for the management of the trust, but will not invalidate the principal or vested estate. Equity will substitute some other mode which will be free from the objectionable features of the one selected by the testator. The general intention of the testator in favor of charity will be allowed to prevail, even though his particular intention as to the manner of managing the gift falls to the ground. (2 Perry on Trusts, sec. 738; *Philadelphia* v. *Girard*, 45 Pa. St. 9).

A vested interest is not subject to the rule against perpetuities. (Gray's Rule Against Perp. sec. 205). Perpetuities are grants of property wherein the vesting of an estate is postponed; and therefore a present gift to a charity is never a perpetuity, though intended to be inalienable. (*Philadelphia* v. *Girard, supra*). It is laid down in some of the text books and in many of the authorities, that a gift to charity dependent upon the happening of some future event or contingency, which may not happen until after the time allowed by the rule against perpetuities, is void for remoteness. Mr. Gray in his work on the Rule Against Perpetuities says: "If a gift is made to a charity on a contingent event, and the happening of the event is a condition precedent to the gift, then, if the

condition is too remote, or, for any other reason, illegal, the gift to the charity is void." (Sec. 605). But he also says what was quoted by this court with approval in *Crerar* v. *Williams, supra:* "If the court can see an intention to make an unconditional gift to charity (and the court is very keen-sighted to discover this intention), then the gift will be regarded as immediate, not subject to any condition precedent, and, therefore, not within the scope of the rule against perpetuities." (Gray's Rule Against Perp. sec. 607.) The same doctrine has been otherwise expressed as follows: "Where, however, the evident intent of the testator or settlor is to have the gift take effect immediately, it will be construed as a present absolute interest, not subject to a condition precedent for its vesting, and consequently not subject to the rule against perpetuities." (18 Am. & Eng. Ency. of Law, p. 366, and cases in note 1).

The immediate and unconditional devotion of a fund to charity, and not the time or manner of its application or administration, is the test of the validity of its creation. (*Webster* v. *Wiggin*, (R. I.) 31 Atl. Rep. 824; *Chamberlayne* v. *Brockett*, L. R. 8 Ch. App. 206; *Russell* v. *Allen*, 107 U. S. 163).

In the case at bar, the testator directs, in the fourteenth paragraph of his will, that the trustees shall retain the fund in their hands and manage, control and invest it, until it shall have sufficiently accumulated for the purpose, subject to the expenses of the trust and the household and personal expenses of his wife, and then shall cause the same to be used for the erection and maintenance of a hospital for the treatment of the sick and diseased to be located in the city of Chicago. In a subsequent sentence of the same paragraph, the testator states it to be his desire that the fund thereby created shall at least equal $100,000 before any of it shall be expended for the purpose of the hospital in that clause or paragraph mentioned. Counsel for appellant say, that by these provisions the time when the accumulation of the fund reaches

$100,000 is fixed as the time when the charitable estate is to vest, and that thereby a remote condition precedent is imposed upon the operation of the charitable trust.   A gift of personal estate at a specified future time or upon the happening of a certain contingency will not vest until the time specified has arrived or until the contingency has happened. (*McCartney* v. *Osburn*, 118 Ill. 403).  Applying this rule, counsel reach the conclusion that, in the present case, no gift is made to the object to be benefited aside from the direction of the trustees to pay over or use the property in question for the beneficiary; and that therefore the present gift to charity is not a present, immediate and vested estate.   But it is well settled that, where a gift is general, and there is simply a direction that it be paid or applied at a specified time or upon the happening of a certain contingency, it will vest at the testator's death, and the payment or application only will be postponed.   (*Scofield* v. *Olcott*, 120 Ill. 362; *McCartney* v. *Osburn, supra*).

In determining whether the gift is immediate, or is to be postponed until the time of payment or application arrives, the language of the testator will be liberally construed in favor of a vested interest, and all the language of the will, as well as that supposed to embody the direction to pay at a certain future time, will be considered in arriving at a proper construction.   As has already been stated, a court will be "keen-sighted" to discover an intention to make an unconditional and immediate gift to a charity.  "The tendency of the courts being to construe limitations as vested, the arrival of the period fixed for or needed for the accumulation will not be deemed a condition precedent to the gift of the accumulated fund, unless the language employed requires such a construction." (Gray on Rule Against Perp. sec. 673).   Where two modes of construction are possible, by one of which a legacy or devise to charity would be made an illegal perpetuity, and by the other of which such a legacy or devise would

be valid and operative, the latter mode of construction will be adopted. (Ibid. sec. 633; *Woodruff* v. *Marsh*, 63 Conn. 125).

An application of these principles to the interpretation of clause 14 leads us to the conclusion, that there was here an immediate gift to charity, and that the estate vested in charity at the death of the testator, from which date the will speaks. There was here an intention on the part of the testator to give a fund to charity at once, though there may have been a definite suspense or abeyance in its actual application. (1 Jarman on Wills,—Bigelow's ed.—p. 248).

Clause 14 begins with the following words: "I give, devise and bequeath all the rest, residue and remainder of my estate, in whatsoever the same may consist and wherever situate, to my executors and trustees hereinafter named, in trust for the uses and purposes as follows:" These words describe a present gift in trust to carry out the provisions of the will. Similar words were construed as indicating a present gift in *Crerar* v. *Williams*, 145 Ill. 625. There, as here, there was a provision for the creation of a corporation in the future, but the donee is not here, as it was not there, the corporation to be so created. The object of the testator's bounty is not the corporation to be created for the purpose of giving effect to the gift, but the sick and diseased and poor and needy. In the *Crerar case*, no time was limited within which the executors and trustees were to organize the corporation, whose creation was provided for in Crerar's will; and the fact, that the time, within which the corporation was to be organized, was not limited, and that such corporation might not come into existence within the period allowed for the vesting of future estates, was held in that case to be no objection to the validity of the will. So, here, if the fourteenth clause of Ingraham's will should be construed as not providing for the creation of a corporation until the accumulation of the fund donated to the amount of

$100,000, still the validity of the gift to charity for the purposes of a hospital would not be thereby invalidated.

It is to be noted that the fund donated for the purposes of the hospital was the whole of the residuary estate, subject to the charges for expenses of the trust and for the wife's household and personal expenses, and subject to the provision made for nephews and nieces who should be in need. The testator gives "all the rest, residue, etc., of my estate  *  *  *  in trust for the uses and purposes as follows." What are the "uses and purposes" thus referred to? "Said trustees shall retain *said* fund in their hands and manage, etc., the *same*, until, etc., and then shall cause *the same* to be used for the erection and maintenance of a hospital," etc. The words, "*said fund*," refer back to the whole of the residue, which was given to the trustees; hence, the whole of the residue was to be retained and managed. The words, "the same," as twice used, cannot refer to any antecedent except "said fund," or all of the residuary estate; hence, the whole of the residuary estate, as given in trust to the trustees, was to be *used* for the erection and maintenance of the hospital. As soon as the testator had dedicated the whole of his residuary estate by the first sentence of said clause 14 to the purposes of the hospital, he then proceeds to speak of said residuary estate as the "*fund hereby created*." Three times he uses these words. In the second sentence of the clause he provides, that his wife shall have control of the application of "the *fund hereby created* for the maintenance and support of said hospital." In the third sentence he expresses his "desire that *the fund hereby created* shall at least equal $100,000 before any of it shall be expended for the purpose of the hospital." In the fourth sentence, he authorizes his executors, etc., to create a corporation and to convey to it "*the fund hereby created* to be, however, used for the support and maintenance of said hospital."

The words, "*the fund hereby created*," describe the present creation of a fund for the hospital, and not a remote or future creation thereof. They imply "an immediate and unconditional devotion of the fund to charity." (*Webster* v. *Wiggin, supra*). In the third sentence, the testator refers to the creation of the fund as distinct from the expenditure of the fund, and in the fourth sentence he refers to the creation of the fund as distinct from the use of the fund. The charitable fund was created at once, that is to say, so as to come into being immediately upon the death of the testator, but the expenditure and use of the fund were deferred until the time of accumulation should arrive. There is an immediate vesting of the estate in charity, but the use and expenditure of the estate have reference merely to the manner of its application or administration. The general gift of the charity is complete, but there is a direction to use or apply the charitable fund at a future time. As was said by the learned chancellor, who decided this case in the court below: "If the fund is created, it is in existence, and is not to be created or to come into existence. If created by the will, it is in existence at the death of the testator, and is necessarily vested."

In *Chamberlayne* v. *Brockett*, L. R. 8 Ch. 206, there were gifts for the erection of almshouses at certain places, "when and so soon as land shall at any time be given for the purpose." Land might never be given for the purpose, and such gifts, if made to an individual, would seem to be void for remoteness, as being dependent on an event which might not arise for an indefinite time. The Master of the Rolls so held, but the Court of Appeals overruled the master, and held, in an opinion by Lord Selborne, that there were other expressions in the will, devoting the whole property to charity immediately on the death of the testatrix. The provision, which standing alone, made the gifts void for remoteness, was overborne by, and made to yield to, the other expressions indicating an

immediate devotion of the property to charity. These other expressions are not as strong in the direction of an immediate gift, as those already referred to as being contained in Ingraham's will. They were: "I feel I am doing right in returning it (my money) in charity to God who gave it;" "I therefore give and bequeath all the rest, residue and remainder, etc., unto my said brothers * * * upon trust," etc. The directions as to the erection of almshouses, as above stated, were then added. In view of the immediate gift, it was held to be immaterial that there was an indefinite suspension or abeyance of its application to the particular use for which it was intended, "as in default thereof it would be applicable *cy pres*." (Tyssen on Charitable Bequests, p. 425).

A present intention to create a present fund for charity, and to presently and immediately devote that fund to such charitable purpose, is apparent also in the use in Ingraham's will of the following words: "It is my special desire, that said hospital shall provide for the poor and needy." A clearly expressed wish by the testator is equivalent to a positive direction or command. (*McCartney* v. *Osburn, supra*). This special desire or positive command is in the present tense, and bespeaks an immediate dedication of the fund to the charitable relief of the poor and needy. In *Howe* v. *Hodge*, 152 Ill. 252, certain trusts, declared in the residuary clause of a will, offended the rule against perpetuities, and, standing alone, were void; but the validity of the will was sustained, and the objectionable provision was overborne and cured by the following sentence at the close of the residuary clause: "My intention in disposing of the property named in this paragraph is to divide it equally among all my grandchildren." These added words were held to indicate an intention to give the grandchildren, as a class, an immediate vested equitable title to the property.

But the most material circumstance, going to show that the testator here intended a present gift to charity

which should vest at once upon his death, is the fact that, at no time between the testator's death and the ultimate use or enjoyment of the fund by the hospital, could any person or corporation other than the hospital use or enjoy any portion of the residuary estate, subject to the charges impressed thereon. Many cases are referred to by counsel for appellant, where the language used in the will indicates an intention to postpone both the vesting and enjoyment of the gift to an uncertain time in the future; other cases are referred to, where the facts show that intermediate estates have been carved out, likely to exceed in duration the limit of the rule against perpetuities. These cases, however, are inapplicable to the case at bar. Here, the fund goes at once and directly to the trustees for the benefit of the hospital, and no intermediate estate is created to be enjoyed by any donee or devisee between the testator's death and the application of the fund to charity. There is no gift prior to the gift to the hospital, and no first taker having precedence over the hospital. The enjoyment or application of the fund is not postponed to await the expiration of any antecedent estate. Charity takes the fund immediately and awaits only the period of accumulation before it may enjoy that which is presently given.

The absence of an intermediate estate or first taker in the fourteenth clause of Ingraham's will brings the present case within the doctrine laid down by Justice Gray in *Odell* v. *Odell*, 10 Allen, 1, where he says: "A gift may be made in trust for a charity not existing at the date of the gift, and the beginning of whose existence is uncertain, or which is to take effect upon a contingency which may possibly not happen within a life or lives in being and twenty-one years afterward, provided there is no gift of the property meanwhile to or for the benefit of any individual or any private corporation." This doctrine is approved and endorsed in *Russell* v. *Allen*, 107 U. S. 163; *Woodruff* v. *Marsh*, 63 Conn. 125; *Crerar* v. *Williams*, 145

Ill. 625.   In the latter case we held that, in order to bring a gift to charity which is to vest in the future, within the rule against perpetuities, there must be a prior gift —a first taker. "A gift may be made to a charity not *in esse* at the time, to come into existence at some uncertain time in the future, provided there is no gift of the property in the first instance, or perpetuity in a prior taker." (2 Perry on Trusts, sec. 736).   To the same effect is Bispham on Principles of Equity, sec. 132, as quoted in *Crerar* v. *Williams, supra.*

While, however, we are of the opinion that there was here an immediate gift to charity, which vested at the death of the testator, yet we do not regard the trust created in favor of the charity as invalid, even if there was no immediate vesting of the estate at the death of the testator.   Let it be admitted, as claimed by counsel, that the estate was not to vest until the fund had reached, by accumulation, the sum of $100,000.   Its vesting was not necessarily postponed to a period forbidden by the rule against perpetuities.   The accumulation here was one which was to take place within the time limited by the rule.

All the provisions of the fourteenth clause must be construed together, and that construction must be adopted, if it is possible to do so, which will bring the vesting of the estate within, rather than beyond, a life or lives in being and twenty-one years and nine months thereafter. The second sentence of the clause provides, that the wife of the testator, if she survived him, should select the location of the hospital, and, *during her lifetime*, should have absolute control of the application of the fund thereby created for the maintenance and support of the hospital. There was to be an application of the fund during the lifetime of a person in being at the death of the testator, to-wit: Mrs. Ingraham.   It is just as clear that the fund was to be applied in her lifetime, as that it was to be applied or expended, when the accumulation should reach

$100,000. The two provisions, one that the fund should be applied during the lifetime of the wife, and the other that it should be applied when it became equal to $100,000 must be construed together. If it was to be applied during the lifetime of the wife, and also when it had accumulated to the amount of $100,000, then the event fixed for the enjoyment of the gift was an accumulation to the amount of $100,000 which should take place during the wife's lifetime. The will not only fixes the amount of the accumulation, but also the time within which the accumulation should reach the specified amount. If the required accumulation was to be consummated within the lifetime of the wife, then there is no violation of the rule against perpetuities.

Again, the testator provides, in the last sentence of the fourteenth clause, that, if certain of his nephews and nieces should at any time during their respective lives be in need, the executors and trustees are authorized to provide for them to the extent of $100,000 out of his residuary estate and the income thereof, etc. As will be shown hereafter, the nephews and nieces here referred to are such nephews and nieces as should be living at the time of the testator's death. The class referred to does not include any nephews and nieces who should be born thereafter. It thus appears, that the residuary estate was to reach the sum of $100,000 within the lifetime of persons living at the time of the testator's death, to-wit: certain nephews and nieces in need. "The rule that the question of remoteness is to be determined from the time of the testator's death, and not of his will, is now settled." (Gray on Rule Against Perp. sec. 231). The fact, that the fund was expected by the testator to reach the sum of $100,000 within the lives of persons in being at his death is further emphasized by the last sentence of the fourteenth clause. That sentence provides that any portion of the $100,000, authorized to be appropriated to the relief of his needy nephews and nieces therein referred to, which should not

be so appropriated, should "revert to the use of said hospital fund," that is to say, should go back to said hospital fund from which it had been withdrawn. We have already seen, that the whole of the residuary estate was devoted to the creation of the hospital fund. So much, not to exceed $100,000, as might be necessary to provide for certain nephews and nieces in need, might be withdrawn from that fund, but, if not appropriated to the purpose of providing for them, the amount so withdrawn was to be returned within their respective lives. The construction here given to the word, "revert," is not inconsistent with anything said in *Thomas* v. *Miller*, 161 Ill. 60, because here the fund had been previously given to the hospital and, therefore, could revert or return to it. As, therefore, the fund was to reach $100,000 within the lives of persons in being at the testator's death, no accumulation was fixed upon as the date for the vesting of the estate, which was not to take place within the time fixed by the rule.

It is true, that the bill in this case contains no allegation as to the value of the testator's estate. It is singularly defective in this respect. One of the established rules for the construction of a will is, that the court will look at the circumstances, under which the devisor makes his will—as the state of his property, of his family, and the like. (*Strain* v. *Sweeny*, 163 Ill. 603). Hence, a bill like this, filed to construe and set aside a particular devise on the ground of its supposed illegality, should set forth such circumstances as serve to show the state of the testator's "property, his family and the like." Circumstances of the character thus indicated are not mentioned in the present bill.

The will itself shows, that the gifts, legacies and devises amount all together to between $260,000 and $270,000, before the residuary estate is disposed of. These figures go to show that the estate was a large one. The inference is clear, that the testator himself expected the

residuary estate to be equal to a sum somewhere in the neighborhood of $100,000. The $50,000, given to the grand-son and daughter-in-law, was to fall into the residuary estate and increase its bulk by that amount in the event of the death of the grandson without issue, and the death or marriage of the daughter-in-law. Counsel for appel-lant concede the value of the estate to be upwards of $400,000. The testimony, taken before the court below upon the question of the amount to be allowed appel-lant's counsel for solicitor's fees, shows that, when the testator made his will, the estate was worth between $600,000 and $700,000, though its value has decreased from these figures in view of the unusual depression in the business of the country since the fall of 1891. If the es-tate was worth $400,000, the residuary estate subject to the charges upon it, would amount to more than $130,000, and if its value was $600,000, such residuary estate, sub-ject to the charges, would amount to more than $300,000.

We are aware, that this case is presented as one which was decided upon demurrer to the bill, and that, there-fore, the court cannot look outside of the allegations of the bill. But the figures, shown by the testimony found in the record, illustrate the importance of making some averment in the bill as to the value of the estate. Where a will directs that a residuary fund shall be required to accumulate until it reaches $100,000, and the bill to con-strue or annul the provisions in regard to such fund shows upon its face, that said fund cannot be much less than $100,000, so that, invested at a fair rate of interest, it will reach $100,000, in a very few years, it is absurd to say that the court must regard the accumulation of the fund to the amount of $100,000, as an event which cannot take place within the time limited by the rule against perpetuities.

Here, the bill does not allege that the residuary es-tate was less than $100,000, at the date of the testator's death, and, therefore, it is not apparent that the direc-

tion to accumulate will ever become operative. The bill, however, does aver that the estate, at the date of the testator's death, exceeded the amount of the specific legacies and bequests, so that there was a residuum upon which the fourteenth clause could take effect. It also avers that the executors and trustees, at the time of filing the bill on August 24, 1894, are threatening to proceed with the erection of the hospital under the fourteenth clause of the will. If they are thus threatening to proceed with the erection of the hospital, the inference is that the residuum, which is admitted to exist, had reached the required amount of accumulation at the time of the filing of the bill, it being presumed that the executors and trustees would proceed in accordance with the terms of the trust, and not in violation thereof, in the absence of any averment charging a contrary course.

The cases are numerous, in which it has been held that accumulating trusts for charity, like that now under consideration, do not fall within the rule against perpetuities, where there is no statute prohibiting such accumulation. In such cases, the charitable bequests have been sustained regardless of the period of accumulation. (*Odell* v. *Odell, supra; Tainter* v. *Clark,* 5 Allen, 66; *Nelson* v. *Cushing,* 2 Cush. 519; *St. Paul's Church* v. *Attorney General,* 164 Mass. 188; *American Academy of Arts and Sciences* v. *Harvard College,* 12 Gray, 582; *Woodruff* v. *Marsh, supra; Bartlett, Petitioner,* 163 Mass. 509; *Webster* v. *Wiggin, supra; Society* v. *Attorney General,* 3 Russ. 142; *Attorney General* v. *Bishop of Chester,* 1 Bro. C. C. 444; *Chamberlayne* v. *Brockett, supra*).

Even if the direction to accumulate, as contained in Ingraham's will, could be regarded as void, the trust created by clause 14 cannot be annulled, because the estate vested in the trustees at the testator's death, and such direction, being for the management of the fund and not of the essence of the gift, will fall away leaving the vested estate to stand; and a court of equity will manage the estate in a legal manner, applying the doctrine of

*cy pres,* which is that, "when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close proximation to that scheme as reasonably practicable." (*City of Philadelphia* v. *Girard's Heirs,* 45 Pa. St. 25).

"If a fund is given in trust for a charity, with a direction to accumulate beyond the legal period, or with any other illegal or impossible direction as to the incidental management of the fund, the court will direct a management that is legal and possible, *cy pres* the original direction; and this on the ground that the donor did not intend his charity to fail because one of the incidental directions could not be carried out." (2 Perry on Trusts, sec. 728; Gray on Rule Against Perp. sec. 607; *Martin* v. *Mangham,* 14 Sim. 230; *Fisk* v. *Attorney General,* L. R. 4 Eq. 521; *Heuser* v. *Harris, supra; Crerar* v. *Williams, supra; Williams* v. *Williams,* 4 Seld. 525).

*Second*—The next ground, upon which the validity of clause 14 is attacked, is based upon the alleged void character of the provision made for certain of the testator's nephews and nieces in the closing part of the clause. The provision here referred to is as follows: "In the event, however, that any of my nephews and nieces, who are the children of my deceased sister Emeline, my deceased sister Eliza, my brother Levi T., and my brother Fernando C. Ingraham, shall be at any time during their respective lives in need, I authorize my said executors and the trustees hereunder to provide for said nephews and nieces to the extent of $100,000 out of my said residuary estate and the income thereof at such times and in such sums as shall, in the judgment of said trustees, be wise and proper. Any portion of said $100,000 not so appropriated shall revert to the use of said hospital fund."

The theory of counsel for the appellant as to this part of the will seems to be, that the provisions for the expenses of the trust, and for the support and maintenance

of the wife, and for the nephews and nieces, are three independent provisions; that they are to be paid out of the residuary estate, and not out of any particular devise; that, after a sufficient amount is taken out of the residuary estate to be applied to the three purposes thus designated, then what remains, after it shall have accumulated to the amount of $100,000, shall be paid over to the hospital for charity. In other words, the contention of counsel is, that the provision for the nephews and nieces is a prior provision to the one made for the benefit of the hospital, and is not dependent on the latter. It is said by counsel that, inasmuch as the nephews and nieces take before the hospital, then, after paying the expenses of the trust, and for the support and maintenance of the wife, and also so much as is necessary to provide for the nephews and nieces, the hospital takes only the surplus. It is then contended, that the provision for the nephews and nieces is void for remoteness and uncertainty, and that, this being so, the gift over to the hospital is also void, because of the uncertainty as to how much the surplus to go to the hospital will be. In support of this theory such cases as that of *Chapman* v. *Brown*, 6 Ves. 404, are referred to.

In *Chapman* v. *Brown, supra*, provision was made for building or purchasing a chapel, and, if there was any surplus, the same was to go towards the support of a faithful gospel minister, not exceeding twenty pounds each year, and, if there was any further surplus, it was to go to such charitable uses as the executors should think proper; it was held there, that the trust for the purposes of a chapel was void because of the uncertainty as to the cost of the chapel, and that, as the other two provisions were dependent upon the first, they fell with the first; and the court there said: "If it could be reduced to any certainty how much would have been employed by the executors for the other purposes, the residue ought to be employed under this last direction; namely, for charita-

109—30

ble purposes generally. * * * But this is so entirely
indefinite, that it is quite uncertain what the residue
would have been, and, therefore, it is void for that uncer-
tainty." In other words, the doctrine is invoked, that a
general residuary bequest will not include any part of the
residue itself which fails, but that such share will devolve
as undisposed of; or, as otherwise expressed, that a be-
quest of the residue of the residue after particular lega-
cies or shares given out of it does not carry the particular
legacies in case of lapse. Thus, if a testator should give
his residuary estate in moieties to two persons, and the
gift of one of these moieties should be revoked, or fail
for any reason, it would not go to increase the amount of
the other moiety, or lapse into the residuary estate, but
it would go to the heirs as intestate property. (13 Am.
& Eng. Ency. of Law, pp. 48-50). Applying this theory,
counsel say that in the present case the testator first
gave an amount, not to exceed $100,000, to certain of his
nephews and nieces out of the residuary estate, and then
gave another portion of said residuary estate to the hos-
pital; that the first gift is void for remoteness, and goes
as intestate property to the appellant, who is the tes-
tator's heir; and that the gift to the hospital, which is
dependent as a mere surplus upon the first gift to the
nephews and nieces, being also void for uncertainty, also
goes to the appellant as heir. The theory, which coun-
sel for appellant thus elaborate and present with so much
learning and ability, we are unable to concur in.

In the first place, we have already held that the gift
to the hospital was a gift of the whole residuary estate,
subject to the charges thereon for the expenses of the
trust, for the support and maintenance of the wife, and
for the relief of the needy nephews and nieces above re-
ferred to. In addition to the considerations already pre-
sented, it is manifest that the provision for the nephews
and nieces is a mere charge upon the provision for the
hospital, and is only incidental thereto; because the pro-

vision for the nephews and nieces is a part of the general provision for the hospital, and is embodied therein, and opens with the following words: "In the event, however, that any of my nephews and nieces," etc. The words, "in the event, however," clearly indicate that the provision made for the nephews and nieces is a mere qualification of what had preceded it. It is not, therefore, an independent provision. The direction, that any portion of the $100,000 not appropriated for the nephews and nieces shall revert to the use of the hospital fund, indicates that such sum was merely intended to be withdrawn from the hospital fund for a particular purpose, and if not needed, was to be returned thereto. This also indicates, that the provision for the nephews and nieces was not intended to be an independent provision. The testator, after declaring that the hospital should provide for the poor and needy, then states that, if any of a certain class of his nephews and nieces should be in need, that is to say, should themselves sink so low in fortune as to belong to the poor and needy, they also should be provided for. In the previous part of his will, the testator had already given more than $100,000 to certain of his nephews and nieces. This fact would seem to indicate, that any further provision for them would be a subordinate, and not an independent, provision. Inasmuch as the intention of the testator here was to give the whole residue to the hospital, subject only to the charge of the legacies in favor of the nephews and nieces, if the latter could for any reason be held to be lapsed legacies, they would fall back into the residuary estate, and would not go to the heirs. (13 Am. & Eng. Ency. of Law, p. 50, note 1). Therefore, even if the provision for the nephews and nieces were void for remoteness, the appellant cannot take it.

But, in the second place, the provision for the nephews and nieces is not void for remoteness. The position of counsel for appellant in reference to this matter is, that the gift to the nephews and nieces, if it be a gift, is a be-

quest to a class, and contingent upon an event that may never happen; that, therefore, the nephews and nieces who may take are not only those who may be alive at the death of the testator, but also those that may be born thereafter; and that, as some nephew or niece may be born after the death of the testator who will have no right to any portion of the bequest until after the death of all the nephews and nieces who were in being at the time of the death of the testator, and after the lapse of twenty-one years after the death of all such nephews and nieces so living at the death of the testator, there would be a violation of the rule against perpetuities.

The general rule is that, when a legacy is given to a class of individuals in general, as to the children of a person, and no period is fixed for the distribution of the legacy, it is to be considered as due at the testator's death, and none but children born or begotten previous to that time are entitled to share in it. It is also laid down in the authorities that, "where by the will of the testator there is a postponement of the division of a legacy given to a class of individuals until a period subsequent to his death, every one who answers the description so as to come within that class at the time which is fixed by the testator for the division, will be entitled to a share, although not *in esse* at the death of the testator, unless there is something in the will to show that the testator intended to limit his bounty to such of the class as would answer the description when the will took effect by his death." (*Jenkins* v. *Freyer*, 4 Paige, 46; *Worcester* v. *Worcester*, 101 Mass. 128; *Chasmar* v. *Bucken*, 37 N. J. Eq. 415; Schouler on Wills, sec. 529).

In the present case, the gift to the hospital vested immediately upon the death of the testator; and, therefore, under the rule laid down, the gift to the nephews and nieces, which is a mere charge upon the provision for the hospital, is to those of such nephews and nieces, who were alive at the death of the testator. But, independ-

ently of this consideration, there is something in the present will to show, that the testator intended to limit his bounty to such of the class, as would answer the description when the will took effect by his death. The testator declares as follows: "In the event, however, that any of my nephews and nieces who are the children of my deceased sister, Emeline, my deceased sister, Eliza, my brother, Levi T., and my brother Fernando C. Ingraham, shall be at any time during their respective lives in need, I authorize my said executors and trustees hereunder to provide for said nephews and nieces," etc. The words, "any of my nephews and nieces *who are* the children," etc., refer to the present time, to the nephews and nieces, who were in being at the time when the testator made his will, or, as the will speaks from the death of the testator, who were in being at the time of his death. We think that, by the use of the words, "who are," the testator intended expressly to limit the provision to those nephews, who should be alive at the time of his death. This being so, there was no violation of the rule against perpetuities, because the provision was to take effect within the life or lives of persons in being at the death of the testator, and therefore, its taking effect cannot be postponed to a period longer than the life or lives of persons in being and twenty-one years and nine months thereafter. For this reason we are of the opinion, that the provision for the nephews and nieces is not void for remoteness. Therefore, the argument of counsel, which bases the alleged invalidity of the gift to the hospital upon the prior supposed illegality of the gift to the nephews and nieces, is without force.

Much discussion is given in the briefs of counsel to the question whether the provision for the nephews and nieces invested the trustees with a mere power dependent upon the discretion of the trustees, or whether it is a power coupled with a trust which can be enforced against the executors and trustees. Counsel for appellees contends,

that the power conferred upon the trustees is a mere discretionary power; while counsel for appellant claim, that it is an imperative power, or a power which implies a trust. The court below held, that it was merely a discretionary power, and that said executors might, at their discretion, in case any of said nephews and nieces should be in need, pay over to him, her or them such sum or sums of money as in their judgment might be necessary to relieve such need, but that none of such nephews and nieces had any vested beneficial interest in or to any portion of such fund, and that, if a contingency should happen which would authorize such executors or trustees to relieve the need of such nephews and nieces, still there existed no enforcible beneficial interest in such nephews and nieces against such executors and trustees, and that the application of such fund for their relief was entirely in the discretion of such executors and trustees.

We do not agree with the court below in its view, that this is a mere discretionary power. The testator declares that, if any of certain designated nephews and nieces "shall be at any time during their respective lives in need, I authorize my said executors and trustees hereunder to provide," etc. An implied trust is one, which arises where the trust is not directly or expressly declared in terms, but the court, from the whole will and the words used, implies or infers that it was the intention of the testator to create a trust. The general rule is, that, if a testator makes an absolute gift to a person in his will and accompanies the gift with such words as, "I authorize," the court will infer that the testator intended to create a trust. In other words, the use of such words as, "I authorize," indicates an implied trust. (1 Perry on Trusts, secs. 112, 248). "A trust for support is not void for uncertainty, as the amount required to furnish maintenance suitable to the standing of the *cestui* can be ascertained with reasonable certainty." (1 Perry on Trusts, sec. 117).

So here, it can be ascertained whether or not the nephews and nieces mentioned are in need. It is not left to the judgment or discretion of the trustees to determine whether they are in need or not. The fact of such need is one which can be ascertained by the court from proofs taken. The discretion conferred upon the trustees is merely in regard to the times at which and the sums in which the amount provided for the nephews and nieces shall be paid to them. Where the discretion conferred upon the trustees is not as to whether anything shall be given to the legatee, but merely as to the method of distributing it, the power conferred is not merely discretionary, but implies an enforcible trust. (*Colton* v. *Colton*, 127 U. S. 300; *Bronson* v. *Strouse*, 57 Conn. 147; *Hunt* v. *Fowler*, 121 Ill. 269; *Johnson* v. *Billups*, 23 W. Va. 685.) We are of the opinion, that the provision in favor of the nephews and nieces is an implied trust, and not a mere discretionary power. The decree of the court below should, therefore, be modified so far as it holds to the contrary.

*Third*—The court below in its decree allowed one of the counsel of the appellant a fee of $1000 and the other counsel a fee of $500. Counsel for the appellees objects to the allowance of these fees. In view of the ruling of this court in *Woman's Union Missionary Society* v. *Mead*, 131 Ill. 338, we do not regard the allowance of the fee as erroneous. The bill as amended asked for a construction of the fourteenth clause. There is sufficient ambiguity about the language of the testator to justify an application to a court of equity for a construction of the clause in question. It is a general rule that, when the testator has expressed his intention so ambiguously as to create a difficulty, which makes it necessary to go into a court of chancery to get a construction of the will, and to remove the difficulty, the costs of litigation must be borne by the estate; and the general residue is the primary fund for the payment of such costs. The amount to be

allowed is so far in the discretion of the chancellor, that, in the absence of proof of the abuse of that discretion, we cannot interfere.

The decree of the circuit court is hereby modified in the respect above indicated and as so modified is affirmed.

*Decree modified and affirmed.*

Subsequently, upon considering the petition for a rehearing in this cause, the following additional practice opinion was, on December 9, 1897, announced:

Per CURIAM: Petition is filed in this case entitled "a petition for rehearing and motion." It is, in fact, a motion to re-tax costs, the purpose being to have this court allow an attorney's fee to counsel for appellant in this court and also to allow certain expenses incurred in prosecuting the appeal. It is stated in the petition that a sum named is a reasonable attorney's fee for the services rendered in this court, and that a certain amount was paid out, by way of expenses, in attending upon this court pending the appeal. An attempt is thus made to raise an issue between the parties as to the allowance of attorney's fees and expenses incurred in this court, the determination of which would require us to assume jurisdiction in a matter in the nature of an original action. We have original jurisdiction only in cases relating to revenue, *mandamus* and *habeas corpus.* In all other cases the jurisdiction is only appellate.

One of the cross-errors assigned on the appeal was that the circuit court erred in allowing attorney's fees for complainant's solicitors, to be paid out of the estate. We considered that assignment of error and held the case presented was one in which such fees could be properly allowed, but we clearly have no jurisdiction to determine or pass upon the reasonableness of attorney's fees not adjudicated upon by the court below. If the petitioner, or party making this motion, could come into this court and urge a claim for reasonable attorney's fee, the other

party would clearly have a right to contest that claim, and we would be compelled to try and determine the issue thus presented. This it will not be seriously claimed we can or should do.

No complaint in the petition is made of our judgment of affirmance nor of the opinion filed in the case. No grounds whatever are shown for a rehearing. This petition and motion are clearly without authority of law, and are denied.                        *Petition denied.*

